## 72413. WINTERS v. PUND et al.
### (346 SE2d 124)

BIRDSONG, Presiding Judge.

Gigi Krause Winters, plaintiff below, appeals from the grant of summary judgment to John Pund, Linda Laube, and Back Stage, Inc. Pund is a hairdresser, and in 1976, with John Epting and Edwin Lusk, two other hairdressers, formed Back Stage, Inc., a hair salon, in Sandy Springs, Georgia. They decided to terminate their arrangement, and on May 26, 1980, at a meeting of the shareholders, Epting and Lusk surrendered their corporate shares, and Winters and Pund became co-owners, each owning 50% of Back Stage.

Pund was elected president and Winters was elected secretary-treasurer. Winters, Pund, and Linda Laube, a Back Stage employee, were elected directors. Winters agreed to the by-laws, which stated that the "president shall be the chief executive officer of the corporation and shall have general and active management of the operation of the corporation." At the shareholders meeting the corporate attorney advised Pund and Winters they should have an "employment agreement" in which the rights of the parties would be defined. The attorney drafted the agreement in accordance with instructions of the parties and forwarded it to them but neither signed the agreement.

Pund and Winters were hairdressers and received commissions according to the amount of income each brought in from their customers. Neither the officers nor the directors of the corporation were paid any amount as such. Winters and Pund shared equally in the management of Back Stage until late 1982 when Winters informed

Pund she no longer wanted to work as a hairdresser but wanted to become a "PR person and manager of the salon. . . ." Pund said he agreed to the new duties for Winters, on a trial basis, at a weekly salary of $400 for Winters. Laube was terminated as an employee of Back Stage but did not resign as a director of the corporation. Finally, Pund told Winters the new arrangement was not working out, because Winters was bringing no money into the corporation and was taking out $400 each week, she was coming to work late and leaving early, and took 2-3 hour lunch periods. Finally, Winters did not show up for an entire week. Winters said she was at a competitor's salon learning "updated techniques." Winters said that during October and November of 1982 she spent equal time at Back Stage and the other hair salon. Winters and Pund had a meeting in November of 1982 in which Winters said Pund gave her an ultimatum that "either I come back behind the chair and do hair or that I would be fired. . . ." Apparently Winters walked out of the meeting and Pund took this as her answer and forwarded a letter to her on November 12, 1982, which terminated her as a Back Stage employee. On November 15, 1982, a meeting of Back Stage's board of directors upheld Pund's firing of Winters, by a 2 to 1 vote, Pund and Laube voting to affirm and Winters voting to rescind. Another directors' meeting was held February 7, 1983, in which Winters was removed as secretary-treasurer of Back Stage. A stockholder's meeting was held August 31, 1983, for the purpose of electing directors, to amend the by-laws concerning the number of directors, and to remove Linda Laube as a director. The meeting was deadlocked at 1-1 on all motions. A second stockholder's meeting met with the same result.

Winters filed an action in equity in Fulton Superior Court (C-92256) on November 15, 1982, against Pund, which requested a temporary and permanent restraining order against Pund from wasting, hypothecating or disposing of the assets of Back Stage, and to prevent Pund from interfering with Winters' interest in Back Stage, and to enforce Winters' right to share in Back Stage management and profits. The pleadings complained of her termination by Pund, of his refusal to share Back Stage's profits, and his refusal to permit her to participate in the control of the corporation as "an equal shareholder, officer and director." Attorney fees were demanded for prosecuting the action. Back Stage was permitted to intervene as a defendant, answered, and filed a counterclaim asking for actual and punitive damages and for a temporary restraining order against Winters.

While the Fulton County equity action was pending, on May 16, 1983, Winters filed this action in DeKalb Superior Court, in six counts, against Pund and Laube individually, and Back Stage. Count 1 alleged a conspiracy between Pund and Laube to refuse her a share in the profits and to exclude her from participation in the manage-

ment and control of Back Stage. This count also alleged her termination was the means used to exclude her from participating in the profits and management. Count 2 alleged Laube's refusal to resign as director after leaving Back Stage employment was part of the conspiracy to expel Winters from participation in the management and profits of the corporation. Count 3 alleged that Pund and Laube breached their fiduciary duties because of their conspiracy. Count 4 averred Pund made false representation to her to induce her to purchase one-half of Back Stage. Count 5 charged that because of the conspiracy, fraud and deceit, and breach of their fiduciary duties, she was wrongfully terminated. Count 6 asked for attorney fees. Damages were prayed for in each of the counts.

On December 30, 1983, Winters filed a separate action in Fulton Superior Court (D-6360) asking for involuntary dissolution of the corporation because she and Pund were deadlocked in voting power, and requested a temporary injunction to prevent Pund and any other officer or director of Back Stage from wasting, hypothecating, selling or otherwise disposing of assets of Back Stage.

The first filed action, in equity, in Fulton County (C-92256) was terminated on June 21, 1983, by the grant of summary judgment to defendants Pund and Back Stage. The other Fulton County action, the dissolution petition, was settled on May 1, 1984, during a hearing in which Pund attempted to establish the book value of Back Stage assets according to the corporate by-laws. Pund testified the net worth of the corporation was $27,500 and under the by-laws the seller must first offer the stock to the corporation based on the book value. Hence, Pund offered Winters, in court, $14,000 for her one-half interest in the corporate stock, and an additional $2,000 for payments remaining due on her corporate car. Winters' counsel asked Pund if he would take $16,000 for his one-half share of Back Stage and Pund said "yes." Winters tendered Pund a check for $16,000 and the trial court ruled that there had been an offer, an acceptance, and a tender of the money and until a court said otherwise there was no need of proceeding further on the dissolution petition because Pund had sold his share of Back Stage to Winters.

On June 15, 1983, defendants had filed a motion to abate or dismiss Winters' DeKalb action for damages, alleging the DeKalb complaint was for "the same cause of action" because it contained "basically the same allegations of plaintiff's original complaint" filed in Fulton Superior Court (C-92256), except for inclusion of Linda Laube, and she also could have been added to the original complaint because she was a director of the corporation which was a party, and had petitioned the court to be made a party. On July 12, 1983, defendants amended their motion to allege the complaint should be dismissed on the grounds of res judicata. This motion was denied. On

March 7, 1984, defendants moved for summary judgment, and on October 23, 1985, the trial court granted the motion, finding the complaint "and all counts contained therein, is barred as to all defendants by res judicata and collateral estoppel, and that there exists no issue of material fact to be litigated by the parties." Winters brings this appeal. *Held*:

Under the doctrine of res judicata "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in. issue in the cause wherein the judgment was rendered. . . ." OCGA § 9-12-40. A different rule applies in the application of the rule of estoppel by judgment, also known as collateral estoppel, since this latter doctrine applies to previous litigation between the same parties, or their privies, based upon a different cause of action, to matters placed in issue in the first suit. *Usher v. Johnson*, 157 Ga. App. 420, 421 (278 SE2d 70). Hence, we must determine if the same cause of action is involved in the first and second actions, whether the same parties, or their privies were involved, and the issues settled in the first action.

A "cause of action" is generally referred to as the right to sue for a thing done or omitted to be done which causes a grievance for which the law gives a remedy. Davis & Shulman, Ga. Prac. & Proc. 1, § 1-2. The "cause" is the right of the party to bring the suit, and the "action" is the means of enforcing the right. Id. In Georgia, "cause of action" has been defined as *"all the facts* which together constitute the plaintiff's right to maintain the action." (Emphasis supplied.) *Parris v. Atlanta, K & N R. Co.*, 128 Ga. 434, 437 (57 SE 692); accord *Cooper v. Public Fin. Corp.*, 146 Ga. App. 250, 252 (246 SE2d 684). Stated differently, "[t]he doctrine of res judicata may be applied where actions between the same parties in relation to *the same subject-matter* are pending at the same time, and a judgment is rendered in one of such actions." (Emphasis supplied.) *Darling Stores Corp. v. Beatus*, 199 Ga. 215 (4) (33 SE2d 701); accord *Gamble v. Gamble*, 204 Ga. 82, 87 (48 SE2d 540). However, in modern legal practice, the central issue in determining whether the doctrines of res judicata and collateral estoppel apply is whether the party against whom the plea is raised has had full opportunity to litigate the issues. *Watts v. Lippitt*, 171 Ga. App. 578, 579 (320 SE2d 581); 46 AmJur2d 675-676, Judgments, §§ 522, 523.

A plaintiff who has a cause of action is not permitted to split his single cause to seek, in successive litigation, enforcement of first one remedy and then a second. *Madison, Ltd. v. Price*, 146 Ga. App. 837, 839 (247 SE2d 523); *Crawford v. Baker*, 86 Ga. App. 855, 859 (72 SE2d 790). This rule applies even where the first action is in equity and the second suit is for damages. *McBride v. Chilivis*, 149 Ga. App.

603, 604 (255 SE2d 80); *Gamble,* supra. The adding of a claim for damages in an action for injunctive relief "which grows out of the same factual situation does not amount to the adding of a new or different cause of action. [Cits.] If, then, plaintiff could or should have included in the injunction suit [as in the instant case] his claim for damages he will not now be heard to assert it." *Smith v. Barfield,* 157 Ga. App. 231, 232 (276 SE2d 899); *Kraft v. Forest Park Realty &c. Co.,* 111 Ga. App. 621, 629 (142 SE2d 402).

It is clear from an examination of the evidence that the suit for injunctive relief and the suit for damages both grew out of the same subject matter, e.g., the corporation, the activities of its officers, the termination of employment of the plaintiff — an officer, and the dissipation of the assets of the corporation. Hence, any claim for damages against Pund and Back Stage could have been asserted in the first action. There was identity of subject-matter and parties. Therefore, res judicata applies as between Winters and Pund and Back Stage.

The remaining issue is whether res judicata or collateral estoppel would apply between Winters and Laube. Even though Laube was not a party to the equity action, the second suit was an action for redress of the same grievance litigated in the first action, and Laube was a member of the corporate board of directors. Under the by-laws "the full and entire management of the affairs and business of the corporations [was] vested in the board of directors, which shall have and may exercise all of the powers that may be exercised or performed by the corporation." Thus, the preliminary decision of the president to terminate Winters was affirmed by the board of directors and it was the board which removed Winters as an officer of the corporation. This act was charged in the second action as a conspiracy between Pund and Laube.

There was no agreement between Winters and the corporation, or Winters and Pund, as to her length of employment. "[I]n the absence of a controlling contract, permanent employment, employment for life, employment until retirement is employment for an indefinite period, terminable at the will of either party, which gives rise to no cause of action against the employer for alleged wrongful termination." *Georgia Power Co. v. Busbin,* 242 Ga. 612, 613 (250 SE2d 442). Hence, Winters' employment was "terminable at the will" of her employer, and this authority was given by the corporate by-laws to the president and the board of directors. There can be no civil conspiracy to do what the actors had a legal right to do. *Busbin,* supra at 614. Allegations and evidence as to improper motives for the employee's discharge "are legally irrelevant and presented no issues for resolution" regarding the right of the employer to terminate an employee at will. Id. Allegations of conspiracy between individuals authorized to

terminate an employee at will "add nothing to the claim for wrongful discharge because neither [director] who had authority to discharge [the employee] . . . can conspire to do that which they legally were entitled to do." Id.; accord *Budd v. Saddler Realty*, 150 Ga. App. 148, 152 (257 SE2d 1); *McElroy v. Wilson*, 143 Ga. App. 893 (1), (2) (240 SE2d 155); *Hill v. Delta Air Lines*, 143 Ga. App. 103, 104 (237 SE2d 597).

Further, a party cannot conspire with himself (*Budd*, supra at 152) and the former adjudication of this cause of action was res judicata as to Pund and the corporation and acts as an estoppel between the plaintiff and a corporate officer whose acts as a corporate director were challenged in the second action even though the grounds are stated differently, because the subject matter is the same, e.g., the alleged wrongful termination of the plaintiff by the corporation, and the second suit was for redress of the same grievance litigated in the first suit. See generally 46 AmJur2d 577, Judgments, § 410. We find the trial court did not err in granting summary judgment for defendants.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JUNE 12, 1986.

*Alan Mullinax*, for appellant.
*Charles R. Desiderio*, for appellees.