991 F.2d 1550
 J.E. AKIN, Pryntha Akin, Individually as minority
stockholders and on behalf of themselves and all other
stockholders of PAFEC Engineering Consultants, Inc., a
Tennessee corporation, PAFEC Engineering Consultants, Inc.,
A Tennessee corporation, Plaintiffs-Appellants,
v.
PAFEC LIMITED, an English Limited Partnership of the United
Kingdom, PAFEC CAE Ltd, an English Limited Partnership of
the United Kingdom, PAFEC Incorporated, a Georgia
Corporation, Richard D. Henshell, and Thomas V. Baudry,
individually, Defendants-Appellees.
 No. 92-8822.
 United States Court of Appeals,
Eleventh Circuit.
 June 2, 1993.
 
 John Phillip MacNaughton, Swift Currie McGhee & Hiers, Alfred L. Mullins, Jr., Cashin Mortin & Mullins, Atlanta, GA, David Todd Markle, John Christopher Clark, Cecil D. Meek, Jr., Haynes Meek Summers & Mabry, Knoxville, TN, for plaintiffs-appellants.
 William J. Berg, Kitchens Kelley Gaynes, P.C., Mark Alan Kelley, Atlanta, GA, James S. Tipton, Jr., Gentry Tipton Webb & Little, Knoxville, TN, Luther J. Carroll, III, Gray Gilliland & Gold, Atlanta, GA, Caesar Stair, Bernstein Stair & McAdams, Knoxville, TN, Leroy Penn Spell, Jr., Craft & Spell, Atlanta, GA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY, Circuit Judge, JOHNSON, Senior Circuit Judge, and MERHIGE*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 Dr. J.E. and Pryntha Akin appeal an order of the United States District Court of the Northern District of Georgia granting summary judgment against them. The Akins brought suit against Richard D. Henshell, PAFEC Ltd., PAFEC CAE Ltd., and PAFEC, Inc. alleging various theories of liability in connection with the demise of a Tennessee corporation in which the Akins were 48% shareholders. The district court held that all of the Akins' claims were barred under Georgia's doctrine of res judicata. For the reasons that follow, we reverse the district court's entry of judgment on the Akins' breach of fiduciary duty claims, but affirm the district court's grant of summary judgment on the other causes of action raised by the Akins in their complaint.
 
 I. STATEMENT OF THE CASE
 A. Background Facts[1]
 
 2
 In 1978, Dr. J.E. Akin, then an engineering professor at the University of Tennessee, entered into an agreement with PAFEC Ltd. ("PAFEC"), a British company that develops and markets scientific software, under which PAFEC agreed to grant a license to market PAFEC software in North America to a corporation to be formed by Dr. Akin. Dr. Akin persuaded his wife, Pryntha Akin, and another couple, Dr. and Mrs. Dewey, to invest in setting up the corporation to receive the PAFEC marketing license. Together, the Akins and the Deweys incorporated PAFEC Engineering Consultants, Inc. ("PEC") under Tennessee law in March of 1979. At the time of incorporation, the Akins received 60% and the Deweys received 40% of PEC's outstanding stock.
 
 
 3
 Shortly after PEC's incorporation, and in accordance with the agreement between PAFEC and Dr. Akin, PAFEC and PEC executed a licensing agreement making PEC the sole authorized dealer of PAFEC software in North America. In return for the license, PEC agreed to pay PAFEC a specified royalty fee on each completed sale. Pursuant to this agreement, PEC began marketing PAFEC software in the United States.
 
 
 4
 PAFEC and PEC's business relationship continued without significant incident until April 1981, when PAFEC came to the conclusion that PEC was not being run in a businesslike fashion. To protect its interests in PEC's performance, PAFEC demanded that the Deweys and the Akins offer PAFEC some measure of influence over PEC activities. In response to PAFEC's demands, PEC agreed to renegotiate the agreement governing the parties' relationship. In June 1981, PAFEC and PEC executed a new agreement under which PEC agreed to sell 120 shares of its stock to PAFEC, giving PAFEC a 48% interest in PEC. In addition, PAFEC obtained the right to designate a representative on PEC's board of directors. PAFEC chose one of its own directors, the defendant-appellee Richard D. Henshell, to serve as its representative on the PEC board.
 
 
 5
 In return for the control the Akins and the Deweys relinquished by agreeing to PAFEC's stock purchase and board representation, the Akins assert that PAFEC orally promised to provide PEC with needed capital by (1) reducing royalty fees, (2) converting PEC's royalty payment structure so that PEC's royalty debt would accrue and be payable only on demand, and (3) agreeing to defer any demand for payment of the accrued royalties until PEC achieved a positive net worth and financial stability. PAFEC denies that it made any such promise, and points out that the written agreement between PAFEC and PEC, which provides that it embodies the "entire agreement" between the parties, does not include any provision modifying PEC's royalty payment obligations.
 
 
 6
 After PAFEC's purchase of PEC stock in June 1981, the Akins and the Deweys shared a combined 52% interest in PEC. In July 1982, the Akins consolidated all of this interest under their own control by buying out the Deweys' shares in PEC. PAFEC objected to the Akins' stock purchase on the grounds that the purchase violated PEC's corporate charter as well as a separate written agreement between PAFEC and Dr. Akin. To prevent the Akins from taking majority control of PEC, PAFEC loaned enough money to PEC employee Thomas Baudry so that he could exercise his option to purchase PEC stock in order to buy the minimum number of shares necessary to reduce the Akins back to the level of minority shareholders.
 
 
 7
 The Akins claim that as a shareholder, Baudry aligned himself with PAFEC, in effect giving PAFEC majority shareholder control over PEC's activities. According to the Akins, PAFEC used this control to operate PEC exclusively for its own benefit and without regard for PEC's own welfare. Although the Akins continued to hold 48% of PEC's stock and Dr. Akin continued to serve on PEC's board of directors, the Akins claim that they were increasingly cut off from PEC's decision making process.
 
 
 8
 In June 1983, the Akins moved to Houston, Texas, so that Dr. Akin could assume a position as head of the mechanical engineering department at Rice University. Shortly thereafter, PEC transferred its corporate headquarters to Atlanta, Georgia. Once in Atlanta, PAFEC's representatives at PEC allegedly ignored Dr. Akin's repeated calls and letters requesting information about PEC operations, and PAFEC and director Henshell allegedly began dispensing with the periodic shareholder and board of directors meetings mandated by PEC's corporate charter.
 
 
 9
 In early 1984, the tensions in the Akins' relationship with PAFEC erupted in a confrontation over PAFEC's proposal to convert some of PEC's royalty debt into PEC equity. Dr. Akin opposed the proposal and threatened to sue PAFEC and its representatives at PEC if the proposal was carried out.[2] The threat of litigation eventually caused PAFEC to abandon its proposal. However, the experience led PAFEC and Henshell to conclude that Dr. Akin's involvement in PEC was becoming an intolerable annoyance. By the spring of 1984, representatives of PAFEC and PEC began discussing options for minimizing or eliminating Dr. Akin's involvement in PEC's business operations. After considering several possible courses of action, it was ultimately decided that the best method of eliminating Dr. Akin's influence would be for PAFEC to call PEC's royalty accounts due, extinguish PEC's assets to pay the debt, and then transfer PEC's sales operations to a new company without Dr. Akin's involvement.
 
 
 10
 In January 1985, Henshell began laying the groundwork for the plan when he caused PAFEC's corporate parent, the defendant-appellee PAFEC CAE Ltd. ("PAFEC CAE"), to incorporate a wholly-owned subsidiary called PAFEC, Inc. ("PINC") under Georgia law.[3] According to the Akins, PINC was created for the express purpose of taking over PEC's assets and operations when PAFEC called PEC's debt due. Although PINC was registered as a wholly-owned subsidiary of PAFEC CAE, Henshell charged the costs associated with PINC's incorporation to PEC.
 
 
 11
 On March 3, 1985, PAFEC demanded immediate payment of all outstanding royalty debt from PEC. On April 8, 1985, PAFEC followed up its demand by filing suit against PEC in Georgia state court for payment of the debt. Although the Akins assert that PEC had valid defenses to PAFEC's demand for payment, PEC elected not to appear in court to defend itself against PAFEC's claim. On June 12, 1985, the Georgia state court entered a default judgment against PEC in the amount of $791,372.71.
 
 
 12
 Following the default judgment, PAFEC and PEC executed a voluntary levy under which PEC turned over all its tangible and intangible assets to PAFEC in partial payment on the judgment. PAFEC assigned all of PEC's former assets to PAFEC CAE, which in turn transferred the assets to PINC. PINC then took over PEC's operations in PEC's former location with all of PEC's former employees.
 
 
 13
 The Akins were not notified of PAFEC's demand for payment or of the subsequent lawsuit until after final judgment was entered against PEC.[4] The Akins learned of the default judgment on July 9, 1985, when Dr. Akin telephoned PEC and the recipient of the call announced the company as PINC. When Dr. Akin inquired why the telephone had been answered in that manner, he was informed of the default judgment and subsequent levy. This lawsuit followed.
 
 B. Procedural History
 
 14
 On January 20, 1987, the Akins filed a complaint in Tennessee state court against Henshell, PAFEC, PAFEC CAE, and PINC for an accounting, a restoration of PEC's assets, and legal damages.[5] The complaint asserted that the defendants were liable to the Akins in both their individual and shareholder capacities for breaches of various fiduciary duties, breach of contract, and unjust enrichment. The defendants jointly removed the case to federal court, and the case was subsequently transferred to the Northern District of Georgia. See 28 U.S.C.A. § 1404 (West 1976); 28 U.S.C.A. § 1441 (West Supp.1992).
 
 
 15
 On October 31, 1988, the Akins moved to amend their complaint to add a civil conspiracy claim and for allowance to make an untimely jury demand with regard to all their claims. The district court granted the Akins' motion to amend their complaint, but denied the motion to make an untimely jury demand. The Akins moved for reconsideration of their request to make a jury demand. On reconsideration, the court again denied the motion to make an untimely jury demand and granted the defendants' motion to strike the jury demand included in the Akins' amended complaint.
 
 
 16
 On June 14, 1989, the defendants filed a joint motion for summary judgment. After an extended briefing period, the district court granted summary judgment for the defendants on August 6, 1992. The district court held that all of the Akins' claims constituted compulsory counterclaims that PEC should have raised in the previous Georgia state court litigation between PAFEC and PEC. As compulsory counterclaims, the district court ruled that the Akins were barred by res judicata from asserting the claims in any subsequent action. As an alternative basis for summary judgment on the civil conspiracy and unjust enrichment claims, the district court ruled that the Akins had failed to state claims for which relief could be granted under Georgia law. The district court entered final judgment in favor of the defendants on August 7, 1992, and the Akins now appeal.
 
 II. ANALYSIS
 
 17
 On appeal, the Akins assert that the district court erred in finding their claims barred by Georgia's doctrine of res judicata. The Akins also urge this Court to review the district court's decision to deny their motion to make an untimely jury demand. Before turning to the Akins' assertions of error in the denial of their motion to make an untimely jury demand, we first consider whether the district court properly resolved the Akins' claims against them on summary judgment.
 
 
 18
 A. The Sufficiency of the Akins' Claims on Summary Judgment
 
 
 19
 Summary judgment is appropriate where a case presents "no genuine issue of material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, the district court determined that the defendants were entitled to judgment as a matter of law because all of the Akins' claims were barred by res judicata. Whether a claim is barred by the principles of res judicata is a question of law subject to de novo review. See Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir.1992); Richardson v. Alabama State Bd. of Education, 935 F.2d 1240, 1244 (11th Cir.1991).
 
 
 20
 Under Georgia law,[6] the scope and application of res judicata is governed by the following statutory provision:
 
 
 21
 A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.
 
 
 22
 O.C.G.A. § 9-12-40 (Michie 1982). A party seeking to invoke res judicata on the basis of a prior judgment must establish three prerequisites: (1) identity of parties, (2) identity of the causes of action, and (3) adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant issues. See O.C.G.A. § 9-12-42; Fowler v. Vineyard, 261 Ga. 454, 405 S.E.2d 678, 680 (1991); Norris v. Atlanta & West Point R.R. Co., 254 Ga. 684, 333 S.E.2d 835, 837 (1985). The district court found all three elements satisfied with regard to each of the Akins' claims. On review, we will separately assess the applicability of Georgia's doctrine of res judicata with respect to (1) the tort claims for civil conspiracy and unjust enrichment,[7] (2) the breach of fiduciary duty claims, and (3) the breach of contract claim.
 
 1. The Tort Claims
 
 23
 The Akins' final amended complaint alleges two causes of action against the defendants sounding in tort. First, the Akins allege that Henshell, PAFEC, PAFEC CAE, and PINC engaged in a civil conspiracy to "deceive, cheat and defraud" PEC of its assets and the Akins of their interest in PEC. According to the complaint, the fraud was "consummated ... in PAFEC's obtaining a judgment against PEC in the manner described herein" so that PEC's assets and business operations could be transferred to PINC. Second, the Akins allege that PINC and PAFEC CAE were unjustly enriched by their acquisition of PEC assets because the voluntary levy was executed pursuant to a fraudulently obtained judgment. The district court held that both of these claims were barred by Georgia's doctrine of res judicata, and that in any event neither cause of action stated a claim for relief under Georgia law.
 
 
 24
 Before reviewing the merits of the district court's disposition of the Akins' civil conspiracy and unjust enrichment claims, we must first determine whether Tennessee or Georgia law properly governs the scope and sufficiency of these claims.[8] Because this case comes to this Court following a permissive change of venue from the Eastern District of Tennessee, we apply Tennessee choice of law principles in determining the applicable law. See Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) (where there has been a change of venue, federal courts apply the law of the state in which the action was first properly filed). Tennessee applies the "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS in determining choice of law questions arising in tort claims. See Hataway v. McKinley, 830 S.W.2d 53, 58 (Tenn.1992).
 
 
 25
 Upon consideration of the relevant factors giving rise to both the conspiracy to defraud and unjust enrichment claims, we conclude that Georgia has the most significant relationship to the Akins' tort claims. The Akins' own allegations indicate that the bulk of the allegedly tortious conduct occurred in Georgia while PEC was conducting business from its headquarters in Georgia. In particular, both the state court judgment and the resulting voluntary levy, which together form the primary bases of the Akins' conspiracy and unjust enrichment claims, took place in Georgia. Moreover, Georgia has a strong interest in applying its law to the Akins' tort claims insofar as both claims arise from a Georgia court judgment allegedly procured by fraud. In contrast, Tennessee's only contact with the Akins' civil conspiracy and unjust enrichment claims is as the state of PEC's incorporation. Under these circumstances, we conclude that Georgia law governs the tort claims raised by the Akins in their complaint. SEE RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145, 148(2) (1971).
 
 
 26
 Having determined that Georgia law applies to the tort claims, we return to the merits of the district court's disposition of the claims on summary judgment. The district court concluded that the civil conspiracy and unjust enrichment claims were barred by res judicata because both claims constituted compulsory counterclaims that PEC should have raised in the previous state court action. See O.C.G.A. § 9-11-13(a). Under Georgia law, parties may not raise "issues arising out of the same transaction which should have been pled as a compulsory counterclaim in another separate suit. If the first suit is completed, then res judicata serves to bar proceeding with the second action." Johnson v. First Carolina Financial Corp., 200 Ga.App. 340, 408 S.E.2d 151, 153 (1991); First Federal Savings & Loan Ass'n v. I.T.S.R.E., Ltd., 159 Ga.App. 861, 285 S.E.2d 593, 595 (1981).
 
 
 27
 On review, we conclude that the district court erred in finding the Akins' tort claims to have been compulsory counterclaims in the prior state court action. Under Georgia law, claims that have not accrued by the time of the first pleading are not compulsory counterclaims. See Wagner v. Howell Enterprises, Inc., 184 Ga.App. 394, 361 S.E.2d 698, 699 (1987); Jenkins v. Martin, 142 Ga.App. 573, 236 S.E.2d 542, 543 (1977). Under this standard, neither the civil conspiracy claim nor the unjust enrichment claim constituted a compulsory counterclaim because neither claim accrued until the prior action had already concluded in the entry of a default judgment.
 
 
 28
 The gist of the Akins' conspiracy claim is not the conspiracy but the underlying fraud, and the claim therefore requires proof of all the essential elements of a fraud action under Georgia law. See Mobley v. Coast House, Ltd., 182 Ga.App. 305, 355 S.E.2d 686, 688 (1987). Because damages are an essential element of a fraud action, the fraud claim did not accrue until the allegedly fraudulent judgment was entered. See Garcia v. Unique Realty & Property Management Co., Inc., 205 Ga.App. 876, 424 S.E.2d 14, 16 (1992) (plaintiff must have damages to successfully maintain fraud action); Limoli v. First Georgia Bank, 147 Ga.App. 755, 250 S.E.2d 155, 156 (1978) (fraud claim accrues on date when suit on the claim can first be successfully maintained). Likewise, a claim for unjust enrichment does not arise until the party accepts the benefit giving rise to the implied promise to pay. See O.C.G.A. § 9-2-7. In this case, neither PAFEC CAE nor PINC accepted any of PEC's assets from PAFEC until after the default judgment was rendered in the prior action. Therefore, we conclude that neither tort claim raised by the Akins arose in time to constitute a compulsory counterclaim in the prior state court action. Because the claims were not compulsory counterclaims, res judicata does not apply to these claims. See Schoen v. Home Fed. Sav. & Loan Ass'n, 167 Ga.App. 644, 307 S.E.2d 72, 73-74 (1983) (where plaintiff's claim did not constitute compulsory counterclaim in prior action, plaintiff could proceed with claim in the subsequent action).
 
 
 29
 As an alternative basis for summary judgment on the Akins' tort claims, the district court ruled that the Akins had failed to state claims for which relief could be granted under Georgia law. The court construed the causes of action as a collateral attack on the prior Georgia state court judgment, and concluded that the exclusive method of attacking the prior judgment was by motion in Georgia state court for equitable relief. See O.C.G.A. § 9-11-60. We affirm the district court's entry of summary judgment on this basis. Georgia law "provides various forms of relief which can be pursued by one who believes that a judgment has been wrongly entered. However, a cause of action for damages based upon the ... alleged fraudulent securing of [the] judgment is not among them." Matthews Group & Assoc., Inc. v. Wages, 180 Ga.App. 151, 348 S.E.2d 695, 697 (1986). Both the conspiracy claim and the unjust enrichment claims rest on allegations that the Georgia state court judgment and resulting levy were secured by a fraudulent conspiracy. Under Georgia law, Akin's exclusive avenue of relief is through an attack on the prior judgment in Georgia state court.[9] See O.C.G.A. § 9-11-60(a). Thus, the district court did not err in granting summary judgment on the Akins' tort claims.
 
 2. The Fiduciary Duty Claims
 
 30
 The Akins allege two causes of action against Henshell as a PEC director and three causes of action against PAFEC as PEC's controlling shareholder for various breaches of fiduciary duty under Tennessee law.[10] Counts I and II allege that PAFEC and Henshell breached their fiduciary duties and duties of loyalty in their management of PEC. Count III alleges that PAFEC breached its duty of fairness as a controlling stockholder. See Tenn.Code Ann. § 48-18-301 (1988); Knox-Tenn Rental Co. v. Jenkins Ins., Inc., 755 S.W.2d 33, 36-37 (Tenn.1988); Johns v. Caldwell, 601 S.W.2d 37, 41 (Tenn.Ct.App.1980).
 
 
 31
 The district court held that all of the Akins' fiduciary duty claims arose in the Akins' derivative shareholder capacity. As derivative causes of action, the district court concluded that the claims should have been raised by PEC as compulsory counterclaims in the prior Georgia state court action, and that PEC's failure to raise the claims barred the Akins from asserting the claims in any subsequent action. See Johnson, 408 S.E.2d at 153; First Federal Savings & Loan Ass'n, 285 S.E.2d at 595. We will separately assess the district court's ruling with regard to each defendant.
 
 
 32
 a. The Fiduciary Duty Claims Against Henshell. The Akins argue that the district court erred in applying res judicata to dismiss their fiduciary duty claims against Henshell because Henshell was not a party or a privy of any party to the prior action. See O.C.G.A. § 9-12-40. Under Georgia law, a judgment binds only the "parties and their privies," and a litigant seeking to invoke the benefits of res judicata must establish an identity of parties in the prior and current actions. See Fowler v. Vineyard, 261 Ga. 454, 405 S.E.2d 678, 680 (1991). Generally, both the party invoking res judicata and the party against whom it is invoked must have been represented in the prior action for res judicata to apply. See Norris, 333 S.E.2d at 837; Bridgestone Firestone, Inc. v. Green, 198 Ga.App. 858, 403 S.E.2d 442, 444 (1991); Firestone Tire & Rubber Co. v. Pinyan, 155 Ga.App. 343, 270 S.E.2d 883, 886 (1980).
 
 
 33
 Parties are in privity for res judicata purposes only if they have "mutual or successive relationships to the same rights or property." Walka Mountain Camp v. Hartford Acc. & Indem. Co., 222 Ga. 249, 149 S.E.2d 365, 367 (1966). Thus, Henshell may not invoke the benefits of PAFEC's prior judgment unless he shares the same rights and duties in this action that PAFEC held in the prior action. See McNeil v. Paine, Webber, Jackson & Curtis, Inc., 249 Ga. 662, 293 S.E.2d 331, 332-33 (1982). Henshell argues that he shares the same rights and duties as PAFEC in his capacity as a PAFEC director and employee. See, e.g., Brinson v. First American Bank, 200 Ga.App. 552, 409 S.E.2d 50, 53 (1991) (servant may claim benefit of res judicata in prior action against master if master was sued under doctrine of respondeat superior and master held identical defenses to that of servant); Winters v. Pund, 179 Ga.App. 349, 346 S.E.2d 124, 127 (1986) (director was entitled to res judicata effect of corporation's favorable judgment when sued in director capacity). In this action, however, Henshell is charged with liability as a PEC director, not as a PAFEC director or employee. Henshell's rights, duties, and liability as a PEC director are in no way successive to or mutual with PAFEC's rights in the previous action. Therefore, Henshell is not entitled to the benefit of res judicata on the basis of privity with PAFEC. SEE RESTATEMENT (SECOND) OF JUDGMENTS § 36 (1982) (a party appearing in an action in one capacity is not bound by or entitled to the benefit of res judicata in a subsequent action in which he appears in another capacity).[11]
 
 
 34
 Henshell also argues that he should be afforded the benefits of res judicata as an indispensable party that PEC failed to implead in the prior action. See Usher v. Johnson, 157 Ga.App. 420, 278 S.E.2d 70, 73 (1981). Under Georgia law, indispensable parties are those whose presence "is required for the granting of complete relief in the determination of a counterclaim or cross-claim." O.C.G.A. § 9-11-13(h). Henshell argues that he is entitled to invoke res judicata as an indispensable party because: (1) the Akins' civil conspiracy claim was a compulsory counterclaim in the prior action between PEC and PAFEC; (2) as an alleged co-conspirator, Henshell became an indispensable party to the adjudication of the civil conspiracy claim; (3) once Henshell became an indispensable party, PEC was required to assert its fiduciary duty claims against him as compulsory counterclaims against an adverse party; and (4) PEC's failure to implead Henshell and assert the fiduciary duty claims in the prior action bars the Akins from now asserting these causes of action. See Usher, 278 S.E.2d at 73 (holding that res judicata barred conspiracy claim against defendant even though defendant had not been a party to the prior action because the civil conspiracy claim should have been adjudicated in a prior action and defendant, as an alleged participant in the conspiracy, would have been indispensable party to that adjudication).
 
 
 35
 In light of our determination that the Akins' civil conspiracy claim was not a compulsory counterclaim in the prior action, Henshell's argument fails at the first step in its analysis. Because the conspiracy claim was not a compulsory counterclaim in the prior action, Henshell was not an indispensable party to that action, PEC was not required to assert its fiduciary duty claims against Henshell as an adverse party, and PEC's failure to assert its fiduciary duty claims against Henshell is not entitled to any res judicata effect. Therefore, we hold that the Akins' fiduciary duty claims against Henshell are not barred by Georgia's doctrine of res judicata, and that the Akins may proceed with these claims on remand.
 
 
 36
 b. The Breach of Fiduciary Duty Claims Against PAFEC. The Akins also contend that the district court erred in finding their fiduciary duty claims against PAFEC barred by res judicata because there is no identity of parties or identity in the causes of action with regard to these claims to support the imposition of res judicata. We conclude that although there is an identity of parties, not all of the fiduciary duty claims asserted against PAFEC are identical to the subject matter of the prior litigation. Therefore, we hold that the district court erred in granting the defendants summary judgment on these claims.
 
 
 37
 The Akins first argue that there is no identity of parties because PAFEC's duties as a majority shareholder ran separately to both PEC and to them individually as minority shareholders. The Akins assert that if their fiduciary duty claims accrued to them directly, they cannot be barred by PEC's failure to raise the claims in the prior action. We disagree and hold that the Akins' fiduciary duty claims against PAFEC are derivative in nature, thus putting the Akins in privity with PEC for res judicata purposes.
 
 
 38
 Under Tennessee law, majority shareholders owe their fiduciary duties both to the company and to their fellow shareholders. See Fausek v. White, 965 F.2d 126, 131 (6th Cir.1992) (applying Tennessee law), cert. denied, --- U.S. ----, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992); Johns, 601 S.W.2d at 41. However, "such a holding does not settle the issue of whether a stockholder may bring a direct action" for alleged breaches of the majority shareholders' duties. Bayberry, 783 S.W.2d at 560. Tennessee courts have indicated that shareholders may not assert any cause of action in their own right unless they can demonstrate that their injuries are distinct from those suffered by the corporation. See Bayberry, 783 S.W.2d at 559-61 (applying corporate law of Maryland and Delaware); American Network Group, Inc. v. Kostyk, 834 S.W.2d 296, 299 (Tenn.Ct.App.1991) (finding Bayberry persuasive in determining shareholders' direct rights and remedies under Tennessee law). Under this rule, the plaintiff shareholder must show some injury distinct from the mere devaluation of the shareholder's capital stock caused by injuries to the corporation. See Bayberry, 783 S.W.2d at 559. The Akins' only claim of injury with regard to their fiduciary duty claims against PAFEC is the devaluation of their shares in PEC caused by the loss of PEC's assets and business operations. We conclude that these claims are derivative in nature and that there is therefore an identity of parties between the Akins and PEC for the purposes of the fiduciary duty claims against PAFEC.[12] See Donalson v. CocaCola Co., 164 Ga.App. 712, 298 S.E.2d 25, 27-28 (1982) (where corporate president/majority stockholder asserted causes of action legally vested in the corporation, plaintiff was in privity with the corporation for res judicata purposes).
 
 
 39
 The Akins also assert that the district court erred in finding the fiduciary duty claims against PAFEC to be compulsory counterclaims which should have been pleaded and adjudicated in the prior Georgia state court suit. See Garrett v. K-Mart Corp., 197 Ga.App. 374, 398 S.E.2d 302, 305 (1990). As a defendant in the prior action, PEC was required to assert as compulsory counterclaims all causes of action "which at the time of pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." O.C.G.A. § 9-11-13(a). "[T]he test to be applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim advanced by the plaintiff and the claim asserted by the defendant. Any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim." P & J Truck Lines, Inc. v. Canal Ins. Co., 148 Ga.App. 3, 251 S.E.2d 72, 73 (1978) (citations omitted); see Goss & Goss Development Co. v. First Union Nat'l Bank, 196 Ga.App. 436, 396 S.E.2d 19, 20-21 (1990).
 
 
 40
 Under the foregoing principles, the Akins are barred from raising any claim on PEC's behalf logically related to PEC's royalty debt, the subject matter of the prior Georgia state court suit between PAFEC and PEC. For res judicata purposes, the prior debt adjudication broadly encompasses "all the facts which together constitute[d] the plaintiff's right to maintain the action." Winters, 346 S.E.2d at 126-27. To the extent that the Akins' fiduciary duty claims arise from the same facts giving rise to PAFEC's right to collect its claimed royalty debt, the Akins are barred by res judicata from now asserting them. See Walker v. Bishop, 169 Ga.App. 236, 312 S.E.2d 349, 352 (1983).
 
 
 41
 The Akins have characterized their fiduciary duty claims against PAFEC as encompassing two categories of claims: (1) PAFEC's internal mismanagement of PEC's finances and expenditures, which ultimately resulted in PEC's inability to satisfy its debt to PAFEC, and (2) PAFEC's role in causing PEC not to defend PAFEC's prior royalty debt action. The Akins argue that because they do not seek to challenge the validity or amount of PEC's total royalty debt as part of their fiduciary duty claims, there is no logical relationship between the two types of claims.
 
 
 42
 We conclude, however, that the breach of fiduciary duty claims arising from PAFEC's general mismanagement of PEC do bear a "logical relationship" to the subject matter of the prior action in the broad sense in which Georgia courts have defined that term. See, e.g., Winters, 346 S.E.2d at 127 (defining subject matter of prior suit by corporate shareholder for injunctive relief against dissipation of corporate assets as encompassing all events leading up to the previously requested injunction); Idowu v. Lester, 176 Ga.App. 713, 337 S.E.2d 386, 387 (1985) (broad and realistic approach is required in determining whether counterclaims are compulsory); Harbin Lumber Co., Inc. v. Fowler, 137 Ga.App. 90, 222 S.E.2d 878, 880-81 (1975) (res judicata barred plaintiff from bringing new wrongful death action on daughter's behalf where plaintiff had failed to raise the claim in a prior action adjudicating the plaintiff's liability and right to damages for plaintiff's own injuries arising out of the same accident). According to the Akins, PAFEC deliberately mismanaged PEC for the express purpose of running up PEC's debt to PAFEC to unreasonably high levels. Thus, the fiduciary duty claims of corporate mismanagement directly relate to the "occurrence" giving rise to the prior action--namely, PEC's accrual of royalty debt to PAFEC. Because the claims are logically related to the subject matter of the prior action, we find these fiduciary duty claims to be compulsory counterclaims that PEC was required to raise in the prior action. Because PEC failed to raise the corporate mismanagement claims in the prior action, res judicata prevents the Akins from now raising the claims on PEC's behalf.[13]
 
 
 43
 On the other hand, we conclude that the breach of fiduciary duty claims arising from PAFEC's actions in directing PEC's litigation of the prior action did not constitute compulsory counterclaims in the prior action. These claims allege breaches of duty throughout the course of the prior action until injury occurred via entry of the default judgment. See Marshall v. Sevier County, 639 S.W.2d 440, 446 (Tenn.Ct.App.1982) (fiduciary is liable for those breaches of duty which result in damage to the principal). Because these claims did not accrue until the prior litigation ended in default, the claims were not yet available to the corporation during the pendency of the proceedings and thus are not barred by res judicata. See Wagner v. Howell Enterprises, Inc., 184 Ga.App. 394, 361 S.E.2d 698, 699-700 (1987); Jenkins, 236 S.E.2d at 543.
 
 3. The Breach of Contract Claim
 
 44
 The Akins also seek to assert a breach of contract claim against PAFEC and Henshell for violating the alleged 1981 oral contract between PEC and PAFEC in which PAFEC promised not to call PEC's debt due until PEC was financially stable.[14] We conclude that the claim falls squarely within the parameters of Georgia's res judicata doctrine. The breach of contract claim directly challenges the timing and amount of PAFEC's demand for payment which was the basis of the prior action. As such, the breach of contract claim constituted a compulsory counterclaim in the prior suit as a matter of law. See O.C.G.A. § 9-11-13(a). PEC had a full and fair opportunity to litigate the breach of contract issue in the prior adjudication and its decision to take a default judgment on the claim is a final adjudication on the merits under Georgia law.[15] See Quarterman v. Memorial Medical Center, 176 Ga.App. 92, 335 S.E.2d 589, 591 (1985); Morgan v. Department of Offender Rehabilitation, 166 Ga.App. 611, 305 S.E.2d 130, 133 (1983). Therefore, the district court correctly determined that res judicata bars the Akins' breach of contract claim. See Winters, 346 S.E.2d at 127.
 
 B. Waiver of Trial by Jury
 
 45
 On appeal, the Akins also seek to challenge the district court's denial of their motion to make an untimely jury demand. See Fed.R.Civ.P. 39(b). The Akins assert that the district court abused its discretion in denying their motion to make an untimely jury demand because the court failed to discuss all of the factors that this Circuit has identified as relevant to the district courts' disposition of Rule 39(b) motions. See Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). We conclude that this issue is not properly before us at this juncture in the proceedings because the district court's ruling on the jury demand issue bears no relation to the final judgment which forms the basis of our appellate jurisdiction.[16]
 
 
 46
 This Court has jurisdiction to review a district court's non-final orders only when those orders merge into a final judgment of the district court.[17] See 28 U.S.C.A. § 1291 (West Supp.1992); Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1530 (11th Cir.1987). When a district court enters a final judgment, "all prior non-final orders and rulings which produced the judgment" are merged into the judgment and subject to review on appeal. Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir.1989). In this case, however, we do not believe that the district court's rulings on the Akins' jury demand motions can be characterized as having "produced" the judgment now before us. Because the district court's grant of summary judgment for the defendants constituted a ruling that the Akins were not entitled to any trial at all, the jury issues raised by the Akins were in effect pretermitted by the entry of final judgment. Thus, the jury demand issues played no role in the entry of the final judgment before us, and we conclude that we do not have jurisdiction to review these issues at this stage in the proceedings. Cf. U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff, 768 F.2d 1099, 1103 (9th Cir.1985) (on review of final judgments, federal courts have jurisdiction to review all interlocutory rulings "that may have affected the outcome of the proceedings in district court").[18]
 
 
 47
 We also decline any invitation to review the jury demand issue pursuant to our pendent appellate jurisdiction. See Schmelz v. Monroe County, 954 F.2d 1540, 543 (11th Cir.1992); Stewart v. Baldwin County Bd. of Education, 908 F.2d 1499, 1509 (11th Cir.1990). The Akins' challenge to the district court's denial of their motion is subject to harmless error analysis. See Howard, 807 F.2d at 1566. We cannot assess whether any error in denying the Akins' jury demand was harmless until after trial. For example, should the Akins' evidence be insufficient to withstand a motion for a directed verdict, the district court's denial of their jury demand would be harmless. See id. Because we cannot predict whether any error in the district court's handling of the Akins' motion will ultimately prove harmless, we decline to exercise our discretion to consider the Akins' objections to the court's ruling at this time.[19] See Crymes v. DeKalb County, Ga., 923 F.2d 1482, 1485 (11th Cir.1991) (whether pendent appellate jurisdiction would be appropriate in a particular case is within appellate court's discretion); Brown v. New Orleans Clerks and Checkers Union, 590 F.2d 161, 165 (5th Cir.1979) (appellate court may decline to exercise pendent appellant jurisdiction where further proceedings may render a decision on the question presented unnecessary).
 
 III. CONCLUSION
 
 48
 For the foregoing reason, the district court's entry of summary judgment on the Akins' civil conspiracy, unjust enrichment, breach of fiduciary duty for PAFEC's corporate mismanagement, and breach of contract claims is AFFIRMED. The district court's entry of summary judgment on the Akins' breach of fiduciary duty claims against Henshell and on the breach of fiduciary duty claims against PAFEC for its handling of PEC's previous litigation, however, is REVERSED and REMANDED for further proceedings.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 On review, we construe the facts in the light most favorable to the Akins as the parties opposing summary judgment. See Real Estate Financing v. Resolution Trust Corp., 950 F.2d 1540, 1543 (11th Cir.1992)
 
 
 [2]
 Dr. Akin took the position that the proposed conversion would violate PEC's charter provision prohibiting majority ownership by any entity lacking United States citizenship
 
 
 [3]
 At the time of PINC's incorporation, Henshell was PAFEC CAE's principal shareholder
 
 
 [4]
 During the pendency of the suit, PEC's counsel wrote Dr. Akin a letter requesting information on any possible defenses to the PAFEC "claim." This letter did not mention that PAFEC currently had an action pending against PEC in court, and PEC's counsel concedes that he did not intend to convey that information in the letter. On receipt of the letter, Dr. Akin suspected that PAFEC had called the royalty debt due. Dr. Akin sent a return letter to inquire whether the attorney represented the interests of PEC or PAFEC. Dr. Akin never received a response to his inquiry
 
 
 [5]
 In their initial complaint, the Akins also named Baudry as a defendant. However, Baudry has since been dismissed from the action with prejudice
 
 
 [6]
 The parties agree that Georgia law governs the application of res judicata to the Akins' claims. See Durfee v. Duke, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963); Harbuck v. Marsh Block & Co., 896 F.2d 1327, 1328 (11th Cir.1990)
 
 
 [7]
 In considering the Akins' civil conspiracy and unjust enrichment claims, we will also address the district court's ruling that these causes of action fail to state claims for which relief may be granted. The district court's conclusions regarding the legal sufficiency of the Akins' tort claims is subject to this Court's de novo review. See Thomas v. Evans, 880 F.2d 1235, 1239 (11th Cir.1989)
 
 
 [8]
 The Akins contend that Tennessee law governs all of their claims, while the defendants advocate the application of Georgia law to determine whether the tort claims state valid claims for relief
 
 
 [9]
 The Akins argue that their fraud claim is cognizable as an independent action to set aside the Georgia state court judgment for fraud under Fed.R.Civ.P. 60(b). Because the Akins' complaint does not request that the Georgia state judgment be set aside, we cannot accept this characterization of the civil conspiracy claim
 
 
 [10]
 We apply Tennessee law to the Akins' fiduciary duty claims where neither party has contested its application. See Bayberry Assoc. v. Jones, 783 S.W.2d 553, 558-59 (Tenn.1990) (applying the law of the state of incorporation to shareholder's fiduciary duty claims where this choice of law was not contested by either party)
 
 
 [11]
 Because Henshell as a PEC director was not an adverse party to PEC in the prior action, the district court also erred in finding the fiduciary duty claims against Henshell to be compulsory counterclaims that PEC was required to raise in the prior action. Under Georgia law, counterclaims are compulsory only as against any "opposing party." See O.C.G.A. § 9-11-13
 
 
 [12]
 Contrary to the Akins' assertions, we do not find support for the Akins' claim to a direct cause of action in Vawter, Kennedy and Kennedy v. Vawter, 1988 WL 18257 (Tenn.Ct.App.1988) (unpublished opinion), rev'd on other grounds, 776 S.W.2d 520 (Tenn.1989). In Vawter, the plaintiff-shareholder asserted that the majority shareholder breached his fiduciary duties to the plaintiff by taking action designed to force the plaintiff out of the company. This asserted injury was not shared by the corporation, and the Tennessee Court of Appeals therefore concluded that the action should have been brought in the shareholder's own capacity and not as a derivative suit. See id. at *3-4; cf. Bayberry, 783 S.W.2d at 560 (concluding that "shareholders may clearly bring a direct action for violation of personal rights, e.g., the right to vote or the right to compel the payment of dividends to which they are entitled")
 
 
 [13]
 The Akins assert that res judicata should not bar their mismanagement claims because PEC did not have a "full and fair opportunity to litigate the issues in the first action." Fowler, 405 S.E.2d at 682. However, the record indicates that PEC's officers and directors had an ample opportunity to assert claims on behalf of PEC in the prior action, as well as a significant interest in doing so. Instead, the fiduciaries in charge of handling the litigation for PEC made a conscious decision not to assert the claims. See Lewis v. Boyd, 838 S.W.2d 215, 220, 220-22 (Tenn.Ct.App.1992) (corporate officers and directors have primary responsibility for determining whether to pursue the judicial remedies available to corporation). The Akins' real challenge lies against the PEC officers and directors for failing to assert the fiduciary duty claim when the opportunity to do arose
 
 
 [14]
 In the district court below, the Akins asserted that PAFEC also breached a separate oral contract between Dr. Akin and PAFEC which included the same obligation not to call PAFEC's royalty debt due. Because the Akins have not raised this claim on appeal, we deem the claim abandoned. See Lusk v. Dugger, 890 F.2d 332, 335 n. 2 (11th Cir.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990)
 
 
 [15]
 The Akins appear to concede that the breach of contract claim constituted a compulsory counterclaim in the prior action, but argue that the prior decision is not binding because PEC's handling of the contract claims in the prior suit was not "adequate." In support of this argument, the Akins refer this Court to federal decisions dealing with successive derivative shareholder suits. See, e.g., Papilsky v. Berndt, 466 F.2d 251, 260 (2d Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); Cramer v. General Telephone & Electronics Corp., 582 F.2d 259, 269 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). We do not find these cases instructive as to the issue before us. The special notice and representation concerns which arise in the derivative shareholder context are not present in cases where, as here, the corporation's directors and officers have acted in response to the situation. See Lewis, 838 S.W.2d at 220, 220-22 (Tenn.1992) (officers and directors, not shareholders, assume the primary responsibility for determining whether to pursue judicial remedies)
 
 
 [16]
 Although both parties allocate the bulk of their argument to the merits of the Akins' challenges, we consider jurisdictional issues sua sponte. See In re King Memorial Hosp., Inc., 767 F.2d 1508, 1510 (11th Cir.1985)
 
 
 [17]
 This Court has held that a district court's disposition of jury demand issues is a non-final order which does not qualify as an immediately appealable interlocutory order or as an independently appealable collateral order. See Howard v. Parisian, Inc., 807 F.2d 1560, 1566 (11th Cir.1987)
 
 
 [18]
 Of course, our reversal of the final judgment on the Akins' breach of fiduciary duty claims will re-open the jury issues with respect to those claims. On remand, the district court's disposition of the Akins' jury demand motions will resume its status as a non-final interlocutory order subject to modification at any time before trial. Where a non-final order is re-opened only by virtue of an appellate court's reversal of the final order, other federal courts have ruled that review of the re-opened issue must await the next entry of final judgment. See Milan Express Co., Inc. v. Western Surety Co., 886 F.2d 783, 785 n. 1 (6th Cir.1989); Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 26 (9th Cir.1981)
 
 
 [19]
 We do note, however, that the district court does not appear to have explicitly employed the five-part balancing test set out by this Court to guide the district courts' disposition of untimely jury demand motions. See Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1188 (11th Cir.1985); Parrott, 707 F.2d at 1267. Whether this deficiency would constitute reversible error on appeal from a completed bench trial is a question we do not reach at this point in the proceedings