**Isao KATO, individually and on behalf of the Estate of Hiroko Kato, deceased, Plaintiffs,**

v.

**COUNTY OF WESTCHESTER, Defendant.**

**No. 95 Civ. 8445 (WCC).**

United States District Court, S.D. New York.

June 7, 1996.

The Law Firm of Edward D. Tanenhaus, P.C., New York City, and H.B. Woolfalk & Associates, Scarsdale, New York, for Plaintiff (Edward D. Tanenhaus, Mary Beth Harmon, and Harold B. Woolfalk, of counsel).

Marilyn J. Slaatten, Westchester County Attorney, White Plains, New York, for Defendant (Syma B. Funt, Asst. County Attorney, of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

On October 3, 1995, plaintiff Isao Kato, acting as an individual and as administrator of the estate of his deceased wife Hiroko Kato, filed this diversity action asserting claims under New York law for wrongful death, negligence, pain and suffering, fear of imminent death and loss of spousal and parental consortium. Defendant County of Westchester has made a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

The complaint in this action alleges that around 10 p.m. on August 10, 1994, Hiroko Kato was driving south on the Bronx River Parkway when a dead tree fell from the center median and struck her car, causing her death from multiple head injuries. The complaint further alleges that the Bronx River Parkway was under the exclusive control of the County of Westchester, which was negligent in failing to remove diseased or dead trees from the area near the roadway or to maintain adequate lighting near the scene of the accident.

Plaintiff asserts that this case falls within this court's diversity jurisdiction. The complaint alleges that plaintiff Isao Kato is a citizen of Japan and an alien resident of the United States residing in Scarsdale, New York, and that at the time of her death, Hiroko Kato was also a citizen of Japan and an alien resident of the United States residing in Scarsdale. Defendant County of Westchester is a municipal corporation organized under the laws of New York State. Defendant contends that we lack subject matter jurisdiction over this action because Isao and Hiroko Kato are or were permanent residents of the United States and therefore should be treated as citizens of New York for purposes of determining whether diversity exists.

## DISCUSSION

As the party claiming diversity jurisdiction, plaintiff has the burden of proving that it is proper. See Willis v. Westin Hotel Co., 651 F.Supp. 598, 601 (S.D.N.Y.1986). Diversity must be complete, i.e., each plaintiff must be able to sue each defendant. See Willis, 651 F.Supp. at 601; 13B Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3605, at 398–400 (1984).

Under 28 U.S.C. § 1332(a)(2),[1] this court has subject matter jurisdiction over any civil action where the amount in controversy exceeds $50,000 and the action is between "citizens of a State and citizens or subjects of a foreign state." Section 1332(a) further provides that "[f]or the purposes of this section, ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."

Section 1332 does not define the phrase "alien admitted to the United States for permanent residence." In construing this provision, however, courts have quite sensibly looked to the immigration laws, and in partic-

---

1. The complaint states that jurisdiction over this action is premised upon 28 U.S.C. § 1332(a)(3), but it is apparent from the factual allegations in the complaint and from plaintiff's motion papers that plaintiff invokes this court's diversity jurisdiction under § 1332(a)(2).

ular to the definition of the similar language "lawfully admitted for permanent residence" set forth at 8 U.S.C. § 1101(a)(20), for guidance in determining whether an alien is admitted for permanent residence. *See Miller v. Thermarite Pty. Ltd.*, 793 F.Supp. 306, 308 (S.D.Ala.1992). Therefore, aliens who have been accorded lawful permanent resident status under the immigration laws are considered aliens "admitted for permanent residence," while aliens admitted to the United States on temporary nonimmigrant visas are not. *See Chan v. Mui*, 1993 WL 427114, at *1 (S.D.N.Y. Oct. 20, 1993) (plaintiff was citizen of Hong Kong for diversity purposes although he lived in Oklahoma and his application for permanent resident status was pending when suit was filed); *Miller*, 793 F.Supp. at 306–08 (defendant present in United States on nonimmigrant temporary worker visa was citizen of Australia and Great Britain for diversity purposes); *Kristensen v. Dampierre*, 1990 WL 103957, at *1–*2 (S.D.N.Y. July 19, 1990) (defendant admitted to United States on E–2 nonimmigrant temporary visa was citizen of France for diversity purposes). As one commentator has stated,

> it is clear that [§ 1332(a) ] affects only the status of those aliens with "green cards"— admitted to the United States for permanent residence. Thus, aliens present in this country on any lesser status will still be considered aliens, able to invoke alienage jurisdiction against a citizen of a state. . . .

1 James W. Moore, Moore's Federal Practice ¶ 0.75[1.–5], at 800.56 (1991).

■ Furthermore, under 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent. . . ." Despite some ambiguity occasioned by the fact that the statutory definition of "State" apparently does not include foreign states, *see* 28 U.S.C. § 1332(d), we agree with Judge Carter of this district who has held that "[t]he most obvious and sensible meaning of § 1332(c)(2) . . . is that the representative of a decedent's estate is treated as having the citizenship of the decedent. Consequently, the representative of the es-

tate of an alien is treated as an alien for purposes of diversity jurisdiction." *See Geler v. Nat'l Westminster Bank U.S.A.*, 763 F.Supp. 722, 726 (S.D.N.Y.1991).

■ This court is satisfied that Isao Kato is present in this country on an E–2 visa and that prior to her death, Hiroko Kato also held an E–2 visa. *See* Affidavit of Isao Kato, dated Feb. 15, 1996, at ¶¶ 3, 5; Petition for Partially Limited Letters of Administration for Estate of Hiroko Kato, dated June 21, 1995, at 1 (indicating E–2 immigration status of plaintiff and decedent; filed prior to commencement of this litigation), attached as Exhibit A to Affidavit of Syma B. Funt, dated Mar. 1, 1996; Hiroko Kato's Passport, attached as Exhibit E to Affidavit of Syma B. Funt, dated Jan. 31, 1996 (indicating E–2 visa status). The E–2 visa may be issued to a citizen of a country that has a treaty of commerce or navigation with the United States who seeks to enter the United States "to develop and direct the operations of an enterprise in which he has invested . . . a substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E)(ii); 22 C.F.R. § 41.51(b). The E–2 visa is a temporary nonimmigrant visa that is originally issued for a period of one year, although it is renewable and can be extended indefinitely. *See* Austin T. Fragomen, Jr., et al., Immigration Procedures Handbook, at 3–3 (1996). Consistent with their temporary nonimmigrant status, neither Isao or Hiroko Kato has ever been issued a green card. *See* Kato Aff., at ¶¶ 3, 5.

As a Japanese citizen present in the United States on an E–2 visa, Isao Kato is not admitted for permanent residence in the United States. Therefore, he is treated as an alien for diversity purposes. Furthermore, because Hiroko Kato was a Japanese citizen admitted to the United States on an E–2 visa, she was also an alien. Hence, under § 1332(c)(2), Isao Kato is also treated as an alien in his capacity as administrator of her estate. Accordingly, this court has diversity jurisdiction under § 1332(a)(2) over plaintiff's claims against the County of Westchester.

Defendant's argument to the contrary boils down to an assertion that Isao and Hiroko

Kato's contacts to New York are so extensive and so indicative of their intention to remain in the United States permanently that they should be treated as permanent residents for diversity purposes despite their temporary nonimmigrant status. Defendant points out that Isao and Hiroko Kato entered the United States in 1969 and moved to Scarsdale in 1978. Their three children either attend or have graduated from schools in the Scarsdale area. At the time of Hiroko Kato's death, Isao and Hiroko Kato owned a house in Scarsdale and cars registered in New York, had New York drivers' licenses, possessed Social Security numbers, owned and operated one restaurant in New York City [2] and managed another. Isao Kato and two of his children currently reside in Scarsdale.

We acknowledge that it is somewhat counterintuitive that plaintiff can live in the United States for 27 years, have strong ties to his New York community, display every indication of wanting to remain in the United States indefinitely, if not permanently, and yet invoke diversity jurisdiction on the ground that he and his decedent are aliens. Nevertheless, that is precisely the result dictated by the plain language of § 1332(a) and by the relevant case law. Indeed, courts have previously rejected "connections" arguments similar to defendant's where the individuals in question were admitted to the United States on temporary nonimmigrant visas. *See Miller,* 793 F.Supp. at 306–07 & n. 1; *Kristensen,* 1990 WL 103957, at *1–*2. Moreover, even if Isao and Hiroko Kato wanted to remain in the United States permanently, that desire does not convert their immigration status from temporary nonimmigrant to "admitted for permanent residence." For reasons that are readily apparent, simply wanting to remain in this country permanently will not confer lawful permanent resident status on an alien in the absence of approval by the INS of an application for permanent residence.

Finally, defendant points out that plaintiff has asserted a claim for loss of parental consortium. Defendant contends that the Kato children, who are not currently named as plaintiffs in this case, are indispensable parties to such a cause of action. The Kato children are United States citizens, and plaintiff does not dispute that two of his children presently reside in Scarsdale. *See* Petition for Letters of Administration, at 3. Hence, their joinder in this action would destroy complete diversity.

In his motion papers, plaintiff asserts that this claim was pleaded in error. Plaintiff now acknowledges that New York does not recognize a cause of action for loss of parental consortium. *See Chaiken v. VV Publishing Corp.,* 1992 WL 168282, at *1 (S.D.N.Y. June 30, 1992); *DeAngelis v. Lutheran Medical Ctr.,* 84 A.D.2d 17, 445 N.Y.S.2d 188, 191 (1981), *aff'd,* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 627, 449 N.E.2d 406 (1983). Plaintiff has indicated that he is willing to withdraw this claim. Accordingly, we need not address defendant's arguments on this issue.

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff may withdraw his claim for loss of parental consortium and file an amended complaint reflecting this change within 15 days of the date of this opinion.

SO ORDERED.

---

**2.** The 1993 and 1994 tax returns for the corporation that owns this restaurant state that foreign persons do not own more than 25% of its stock despite the fact that Isao Kato is listed on the same forms as owning 100% of the company's shares. *See* Exhibit A, attached to Sur-reply Affidavit of Syma B. Funt, dated Mar. 21, 1996. Defendant views these returns as evidence that the Katos "did not consider themselves foreigners." Funt Sur-reply Aff., at ¶ 3.