**Anne CONNOLLY, Plaintiff,**

v.

**Connie SPIELMAN, Gursharn S. Rakhra, Colchester Health Center, Raul Grinberg, G. Tufau and Delaware Valley Hospital, Defendants.**

No. 97–CV–98.

United States District Court,
N.D. New York.

March 20, 1998.

---

De Caro & Kaplen, LLP, New York City, for Anne Connolly; Michael Kaplen, of counsel.

Levene, Gouldin & Thompson, LLP, Vestal, NY, for defendants Connie Spielman, Gursharn Rakhra and Delaware Valley Hospital; John J. Pollock, of counsel.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

In this diversity action for medical malpractice, defendants Connie Spielman, Gursharn Rakhra and Delaware Valley Hospital (hereinafter "defendants") move to dismiss the Complaint, for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). All defendants are New York citizens.

### I. Background

Plaintiff Anne Connolly was born (in 1945), raised and attended high school in the state of Pennsylvania. Def. Ex. K at 1–2. She moved to New York State in 1980. Pl. Dep. at 134. She has taught high school math at the Downsville Central School in Downsville, New York since 1985. *Id.* at 4, 66.

In June of 1995, however, plaintiff decided to take a leave of absence from her job and returned to Swoyersville, Pennsylvania to care for her ailing mother and look for work. Pl. Aff. ¶ 4; Pl. Dep. at 49, 66. When she left Downsville, she took all her personal belongings with her. Pl. Aff. 4. Moreover, despite the leave of absence, she maintains that she was going to stay in Pennsylvania and had no intent to return to New York. *Id.* ¶¶ 4, 6.

Eventually, however, her mother's health improved and plaintiff decided to get an advanced teaching certificate from a college in New Mexico. Pl. Aff. ¶ 6; Pl. Dep. at 50. She planned on returning from New Mexico after one year to look for a teaching job in Pennsylvania. Pl. Aff. ¶ 6; Pl. Dep. at 23–24. Plaintiff left for New Mexico in August of 1995.[1]

In January of 1996, while still in New Mexico, plaintiff discovered she had breast cancer. Pl. Aff. ¶ 7. She moved back to Swoyersville the next month and was treated by an oncologist in Wilkes–Barre, Pennsylvania, where she also underwent chemotherapy. Id, ¶ 8; Pl. Dep. at 50–51. At that time, she also began staying with her sister in Wilkes–Barre. Pl. Aff. ¶ 8. In March of 1996, plaintiff obtained a Pennsylvania driver's license, registered her car in Pennsylvania, and obtained car insurance from a Pennsylvania insurance agent. Pl. Aff. ¶¶ 11 and Exs. 1–2; Pl. Dep. At 133; Def. Ex. M at 1–2. The same month, plaintiff registered to vote in the Swoyersville Borough of Luzerne County, Pennsylvania. Pl. Aff. ¶ 12 and Ex. 3.[2] She also joined a cancer support group at Nesbitt Hospital in Kingston, Pennsylvania. Pl. Aff. ¶ 10.

Plaintiff had a mastectomy in Kingston on July 31, 1996. Pl. Aff. ¶ 9. She returned to her teaching position in Downsville in September, but alleges she did so only out of economic necessity; she couldn't find work anywhere else, and the Downsville position provided health insurance coverage. Pl. Aff. ¶ 9; Pl. Dep. at 34. Nonetheless, she maintains that her plan to continue to reside in Pennsylvania and take care of her mother

---

1. Between June and August of 1995, plaintiff alleges she consulted and was treated by defendants for problems with her left breast. That treatment is the subject of her malpractice claims.

2. Plaintiff voted in Swoyersville in November of 1996. Pl. Dep. at 134.

remained unchanged. She did not rent an apartment in Downsville, but rather rented space in a friend's home where she stayed during the week. Pl. Aff. ¶¶ 14–15; Pl. Dep. at 34–35. On weekends (when her health permitted) she would return to her mother's house in Swoyersville.[3] Pl. Aff. ¶ 15; Pl. Dep. at 52.

Since plaintiff returned to her job in Downsville in the fall of 1996, her primary medical care has been at Lourdes Hospital in Binghamton, New York. Pl. Dep. at 54. From September of 1996 until August of 1997, the only medical care plaintiff received in Pennsylvania was on one occasion in December of 1996. *Id.*

Plaintiff filed this action on January 24, 1997, alleging, *inter alia,* that defendants failed to diagnose her breast cancer when they treated her in the summer of 1995.

## II. Discussion

Defendants move to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. The Court first notes that the motion is untimely under the Pre–Trial Scheduling order, which requires that jurisdictional motions be filed by August 9, 1997. Nonetheless, the Court will consider the motion. The Scheduling Order notwithstanding, it is well-settled that challenges to the Court's subject matter jurisdiction are not waivable and can be raised at any time. *See* Fed.R.Civ.P. 12(h)(3); *Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp.,* 109 F.3d 105, 107 (2d Cir.1997); *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1420 (2d Cir.1997).

Because this is an action in diversity, subject matter jurisdiction will exist if the amount in controversy exceeds $75,000, "exclusive of interests and costs," and the dispute is between "citizens of different states." *See* 28 U.S.C. § 1332(a)(1). Our focus is on the second requirement: defendants contend that because all the parties in this action, including plaintiff, are New York citizens, the dispute is not between citizens of different states. Plaintiff contends she is a citizen of Pennsylvania.

For diversity purposes, citizenship is determined at the time an action is commenced. *See Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 429, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); *Maryland Casualty Co. v. W.R. Grace and Co.,* 23 F.3d 617, 622 (2d Cir.1993), *cert. denied,* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994). Moreover, the operative term of art in determining a party's citizenship is "domicile." *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986). Domicile has two elements: physical presence in a place and a state of mind evincing an intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Domicile " 'is the place where [a person] has (her) true, fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning.' " *National Artists Management Co. v. Weaving,* 769 F.Supp. 1224, 1228 (S.D.N.Y.1991) (quoting 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3612 at 526–27 (1984)). A party may have multiple residences, but only one domicile. *See Williamson v. Osenton,* 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *National Artists,* 769 F.Supp. at 1227.

Plaintiff has stated plainly in her affidavit and deposition that when she moved to Pennsylvania in June of 1995, she intended to remain there. Such statements of subjective intent, though relevant, are not dispositive in the face of objective facts to the contrary. *See Willis,* 651 F.Supp. at 601; *Bevilaqua v. Bernstein,* 642 F.Supp. 1072, 1074 (S.D.N.Y. 1986). Objective indicators of a party's intent regarding domicile include

---

**3.** Plaintiff's mother passed away in April of 1997. Pl. Dep. At 57. Thereafter, she began staying with her sister in Pennsylvania. *Id.*

Plaintiff also contends that to the extent she returned infrequently to Pennsylvania on weekends in the fall of 1996, her health had deteriorated from the second round of chemotherapy she was undergoing at the time, making travel difficult. Pl. Aff. ¶ 16.

current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes.

13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3612 at 530–31. (1984). No single factor is dispositive. *Id.* at 531.

 Plaintiff seems to concede that up to June of 1995, she was domiciled in New York. Her contention is that she changed her domicile to Pennsylvania thereafter and continued to be a Pennsylvania domiciliary as of January of 1997, when this lawsuit was commenced. *See* Pl. Mem. in Opposition at 2. For two reasons, then, the Court concludes that plaintiff has the burden of establishing diversity on this motion. First, the party invoking the Court's jurisdiction has the burden of proving complete diversity at the time the action was commenced by a preponderance of the evidence. *Kubin v. Miller,* 801 F.Supp. 1101, 1110 (S.D.N.Y.1992); *National Artists,* 769 F.Supp. at 1228. Moreover, "[w]here a party has established a domicile . . . the burden for demonstrating that a new domicile has been established lies with the person seeking to establish the change." *National Artists,* 769 F.Supp. at 1228. Because plaintiff asserts a change of domicile from New York to Pennsylvania in June of 1995, she has the burden of establishing the new domicile. *See Peregrine Myanmar Ltd. v. Segal,* 1995 WL 723359, at *5 (S.D.N.Y.), *rev'd in part on other grounds,* 89 F.3d 41 (2d Cir.1996).

In support of her change of domicile, plaintiff asserts she moved all of her property and possessions from New York to Pennsylvania in June of 1995 with the intent to establish a new domicile. The following factors support this contention: (1) plaintiff joined a cancer support group in Pennsylvania upon her return from New Mexico; (2) she obtained a driver's license in Pennsylvania in March of 1996; (3) she registered to vote in Pennsylvania in March of 1996, and voted in Swoyersville in November of 1996; (4) she obtained medical treatment in Pennsylvania for her cancer between March and August of 1996. Moreover, plaintiff's family and spiritual life was centered in Pennsylvania. This evidence is consistent with plaintiff's subjective statements of intent. In addition, plaintiff was physically residing in Pennsylvania as of June of 1995.

Several factors, however, militate against her subjective statements of intent. When she left her job in Downsville in 1995, she did not resign; rather, she took a two-year leave of absence, which directly contradicts her assertions that she did not plan to return to her job. Moreover, between June and August of 1995, she received medical treatment from New York practitioners in New York. And although her move to Pennsylvania in June of 1995 is consistent on its face with her subjective statements of intent, it is equally consistent with her practice, between 1990 and 1994, of spending her summers with her mother in Pennsylvania. *See* Pl. Dep. at 73.

Additionally, the evidence upon which plaintiff relies to establish Pennsylvania as her domicile is not as probative as it seems at first glance. Though she did obtain a Pennsylvania driver's license in 1996, she also obtained a New Mexico driver's license in August of 1995. Furthermore, her registration as a voter and actual voting in 1996 in Swoyersville must be viewed in light of her admission that she had not voted since the 1970's. *See* Pl. Dep. at 134. *See also Leon v. Caribbean Hosp. Corp.,* 848 F.Supp. 317, 318 (D.P.R.1994) ("voter registration is indicative of very little for a person who has previously shown no interest in participating in the electoral process").[4] Also revealing is the fact that as of January of 1997, plaintiff had bank accounts in New Mexico and New York. Def. Ex. M at 2–3. The only Pennsylvania account to which she points was opened in her mother's name in March of 1996. *Id.*

Perhaps most telling, however, is that despite her assertions that she left New York

---

4. Similarly, plaintiff's 1996 tax returns, listing her as a Pennsylvania resident, are of little import on this motion. They are unsigned, undated, and in any event would likely have been filed well after this suit was commenced.

for good in June of 1995, she returned to her teaching position there in September of 1996, a bit over four months prior to the filing of this lawsuit. Moreover, her primary medical care since that time has been from Lourdes Hospital in Binghamton. She continued to reside and work in Downsville at the time this action was commenced. Finally, her "return" trips to Pennsylvania during this period were to either her sister or mother's house, rather than to any permanent abode to which she might habitually return.

The evidence upon which plaintiff relies reflects that she had close family and personal ties to Pennsylvania, ties that undoubtedly have acquired increased significance as her condition progresses. Those ties however, do not bespeak the type of permanency and intent to remain indefinitely upon which the domicile analysis is premised. The evidence, at best, is equivocal, and fails to show that plaintiff established a new domicile in Pennsylvania at any time prior to the commencement of this action.

For these reasons, the motion to dismiss for lack of subject matter jurisdiction is granted.

## III. CONCLUSION

It is hereby

**ORDERED,** that defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction is **GRANTED,** and the Complaint is **DISMISSED.**

**IT IS SO ORDERED.**