Nikolai **TEVDORACHVILI**, Plaintiff,

v.

**THE CHASE MANHATTAN BANK**, Defendant.

**No. 99 CV 6001 ILG.**

United States District Court, E.D. New York.

July 7, 2000.

634

Manuel W. Gottlieb, The Chase Manhattan Bank, New York City, for defendant.

Marina Tylo, Brooklyn, NY, for plaintiff.

### MEMORANDUM and ORDER

GLASSER, District Judge.

Plaintiff Nikolai Tevdorachvili alleges that in August, 1998, wire transfers amounting to $157,000 were made from his checking account with the defendant Chase Manhattan Bank to an account with a Latvian bank called Ogres Komercbanka. Plaintiff alleges that the payment orders purportedly authorizing these transfers were issued without his knowledge, and that the signature they bear appearing to be his is a forgery. Plaintiff now brings this lawsuit against Chase, alleging breach of contract, breach of fiduciary duty, violation of New York Banking Law § 676, breach of implied duties of good faith and fair dealing, conversion, negligence and "gross negligence." Plaintiff seeks special and consequential damages, punitive damages, and a declaratory judgment directing Chase to enlist the services of a handwriting expert and to "utilize the conclusion" of that expert. Complaint at ¶ 46.

1. Because the two complaints in this action are identical but for their captions, reference

Defendant Chase has moved to dismiss the Complaint for lack of subject matter jurisdiction, insufficiency of service of process, and failure to state a claim as to all but the cause of action for breach of contract. For the reasons that follow, Chase's motions to dismiss for lack of subject matter jurisdiction and for insufficiency of service are denied, and Chase's motion to dismiss the Complaint, excepting the cause of action for breach of contract, for failure to state a claim is granted.

### BACKGROUND

The Eastern District Civil Docket shows that the initial complaint in this matter was filed, and summons was issued on September 27, 1999. Three days later an amended complaint was filed, although close inspection of the two documents suggests that the only difference between them is in the caption of the initial complaint, where the word "amended" is crossed out. Otherwise the summonses both bear the same date, September 4, 1998, the complaints' signature pages are both signed by plaintiff's counsel, Marina Tylo, and dated September 14, 1998, and both complaints are accompanied by verifications signed by the plaintiff, and dated, inexplicably, September 10, 1998. Finally, the allegations of both complaints are identical.

One hundred and eighty-two days after the "amended" complaint was filed, service of both complaints upon Chase was executed on March 30, 2000. Return of service was filed with this Court on April 4, 2000.

Plaintiff alleges, and Chase does not dispute, that the Chase Manhattan Bank is a banking institution domiciled in New York. Of himself, plaintiff alleges that he "presently resides at 8700 25th Avenue, 4N, Brooklyn, New York." Complaint at ¶ 1.[1]

Plaintiff also alleges that "[o]n or about 2/07/97 Plaintiff established an account at

is made simply to the "Complaint."

Chase Manhattan Bank ... :" *Id.* Plaintiff further alleges that "on or about 8/24/99" he received notice of a wire transfer in the amount of $152,000 out of his account. *Id.* at ¶ 6.[2] Plaintiff describes responding to this notice with distress, and a visit to "the defendant bank's branch at which he [viz., the plaintiff] customarily transacted his various banking activities." *Id.* at ¶ 7. Plaintiff alleges that he was eventually "referred to the Manhattan headquarters of the defendant bank," where he discussed the matter with an investigator from Chase on August 25, 1998. *Id.* A few days later, a second payment order was executed against plaintiff's account with Chase, in the amount of $5,000. Once again, plaintiff alleges that he contacted Chase to complain that he had been the victim of fraud and forgery. *Id.* ¶¶ 15–16. Finally, plaintiff alleges that "[o]ver the next few months" after these purportedly fraudulent transfers, plaintiff "met with Mr. Boris Maltsev [an investigator with Chase who was able to communicate with plaintiff in Russian] on numerous occasions...." *Id.* at ¶ 17.

In his opposition to the defendant's motion to dismiss for lack of subject matter jurisdiction, plaintiff has submitted an affidavit by Irina Issatchenko, who states that since June 11, 1993, she has been married to the plaintiff. Issatchenko Aff. at ¶ 2. She also avers that her husband "has been and still remains a citizen of the Country of Russia," and that "[h]e is a resident and domiciliary of the City of Moscow, Russia." *Id.* at ¶ 3. The Issatchenko Affidavit concludes with this statement:

> When my husband visits this country, whether for the purpose of business or pleasure, he stops over in the City of New York. Prior to me purchasing a house located at 24 Eyland Street, Staten Island, New York, and re-furbishing it, my husband used to stop over at 8700

25th Avenue, Brooklyn, his friend's residence.

*Id.* at ¶ 4. Plaintiff's opposition papers also include a copy of Tevdorachvili's Russian passport. Pl. Mem. in Opp., Exh. A. The document appears to be a passport issued by the Union of Soviet Socialist Republics, issued on December 14, 1995, and expiring on December 14, 2000.

Finally, on July 7, 2000, at oral argument, plaintiff's attorney submitted an affidavit from the plaintiff, attesting that he is not, and has never been, "either a citizen or a permanent resident of the United States of America and the State of New York." Tevdorachvili Aff. at ¶ 3.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

Plaintiff's claims against Chase all arise under state law. Thus, this Court has subject matter jurisdiction over these claims only if plaintiff and Chase are of diverse citizenship. *Franceskin v. Credit Suisse,* No. 98–9376, 2000 WL 719494 at *4 (2d Cir. June 5, 2000). The diversity jurisdiction statute provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects or a foreign state ....

28 U.S.C. § 1332(a).

 The elements of the citizenship requirement on diversity jurisdiction are familiar. Citizenship for diversity purposes is determined at the time an action is commenced. *Maryland Casualty Co. v. W.R. Grace and Co.,* 23 F.3d 617, 622 (2d Cir.1993), *cert. denied,* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994). The inquiry focuses on the parties' domicile, a conceptual amalgam consisting in two

---

**2.** The date referred to in ¶ 6 is evidently a typographical error (a conclusion borne out by an Affidavit of Forged Signature sworn to

by Tevdorachvili on August 25, 1998). Complaint, Exh. B.

parts: physical presence in a place and a state of mind evincing an intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).

■ "When the domicile of a party is in doubt, its determination requires an evaluation of all the circumstances of the case." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3612 at 529 (1984). The factors to be considered in the course of this evaluation include

> current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes . . . .

*Id.* at 530–31; *see also Connolly v. Spielman,* 999 F.Supp. 270, 272–73 (N.D.N.Y. 1998) (applying same factors to find New York domicile against plaintiff's assertion of intent to establish Pennsylvania domicile).

■ It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of showing that such jurisdiction lies. *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994). Thus, the burden here is on the plaintiff Tevdorachvili to show that he is legally domiciled somewhere other than New York.

■ The evidence bearing most directly on this question is the copy Tevdorachvili's passport, since if he is a citizen of a foreign state, who at the same time does not have permanent resident status in the United States, then he is an alien for the purposes of diversity jurisdiction. This conclusion rests on a basic principle of alienage jurisdiction: "if an alien is a citizen of a foreign state, the fact that the person may be a resident of the United States is irrelevant unless the alien has received permanent residency status under the United States immigration law." 15 *Moore's Federal Practice* § 102.74 at 142 (3d ed.2000); 28 U.S.C. § 1332(a) ("For the purposes of this section . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."). In *Kato v. County of Westchester,* 927 F.Supp. 714 (S.D.N.Y. 1996), the Court acknowledged that it was "somewhat counterintuitive" to say of a plaintiff who had lived in the United States for 27 years, cultivated "strong ties to the New York community," and displayed "every indication of wanting to remain in the United States indefinitely" that he was nevertheless an alien for diversity purposes. *Id.* at 717. The Court reasoned that the plaintiff, notwithstanding extensive contacts with the forum (which, in the case of any citizen of the United States, would have been conclusive of domicile in New York), was proceeding as the executor of a decedent who had been a Japanese citizen residing in the United States on a "temporary" E–2 visa that does not confer "permanent residency status" for the purposes of 28 U.S.C. § 1332(a). *Id.* at 715–16. It followed that the plaintiff should be treated as an alien. *Id.* at 716. *See also Breedlove v. Nicolet,* 32 U.S. (7 Pet.) 413, 431–32, 8 L.Ed. 731 (1833) (observing that, in a suit between citizens of the Republic of Switzerland and citizens of the State of Louisiana, if the plaintiffs were "originally aliens, they did not cease to be so, nor lose their right to sue in the federal court, by a residence in Louisiana."); *Foy v. Schantz, Schatzman & Aaronson,* 108 F.3d 1347, 1349 (11th Cir.1997) (holding that the "permanent resident alien provision of § 1332(a) applies only to aliens who have received permission from the INS to remain permanently in this country," and without regard to evidence of the foreign national's professed intention to remain in this country, as evidenced by his pending application for permanent resident status); *Engstrom v. Hornseth,* 959 F.Supp. 545

(D.P.R.1997) (analyzing three possible interpretations of the "deeming" provision of § 1332(a) and concluding that its only effect "is to eliminate the district courts' jurisdiction over suits between a citizen and a permanent resident alien, when both are domiciled in the same state"); *Helmut J. Unkel Ltd. v. Tay*, No. C 94–20573, 1995 WL 55330 at *1 (N.D.Cal. Feb.7, 1995) (finding that defendant, a citizen of Indonesia without permanent residency status, was an alien for diversity purposes, despite owning a house in California).

 Here, there is no issue about plaintiff's nationality, or his status as a resident of this country: he is a Russian national, and he is not admitted as a permanent resident to the United States.[3] These findings are supported both by the plaintiff's passport, a copy of which has been attached as Exhibit A to his memorandum of law in opposition to defendant's motions, and by an affidavit from the plaintiff, plainly stating that he is neither a citizen nor a permanent resident of the United States.[4] In the absence of evidence to the contrary, and with no reason to doubt the truth of plaintiff's averment, this Court concludes that the plaintiff is an alien and not a domiciliary of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). This conclusion, taken together with Chase's undisputed domicile in New York, compel the conclusion that Chase's motion to dismiss for lack of subject matter jurisdiction must be denied.

## II. *Service of Process*

Rule 4(m) of the Federal Rules of Civil Procedure provides that

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Chase argues that because the plaintiff failed, by some 63 days, to effect service of process within the 120–day time limit, and because the plaintiff has failed to show good cause for the failure, Rule 4(m)and Rule 12(b)(5) mandate dismissal of the Complaint. Although this Court agrees with the premises of Chase's argument, it declines to draw the same inference.

 There is no dispute that service of process was not made until a full 182 days had elapsed after the filing of the Complaint. Plaintiff's counsel has attempted to account for the shortfall by explaining that shortly before the expiration of the 120 days, she contacted the Chambers of this Court and told a secretary that she had been "unable to locate the private server [that is, a server of process whom she had hired to effect service] within this State ... while still not being able to contact him [sic]." Tylo Aff. at ¶ 2–3. Ms. Tylo goes on to argue that because this Court was "on notice" of problems she was having effecting service of process *before* the 120 days had elapsed, good cause exists for her failure to effect service within another

---

**3.** Although he holds a passport originally issued by the erstwhile Union of Soviet Socialist Republics, it may be presumed that such a document remains evidence of citizenship of the successor state, the Russian Federation. *See Lehigh Valley R.R. Co. v. State of Russia*, 21 F.2d 396, 401 (2d Cir.), *cert. denied*, 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432 (1927) ("A monarchy may be transformed into a republic, or a republic into a monarchy; absolute principles may be substituted for constitutional, or the reverse; but, though the

government changes, the nation remains, with rights and obligations unimpaired.").

**4.** On a motion to dismiss for lack of subject matter jurisdiction the trial court has broad discretion to decide the issue of domicile on the basis of the pleadings, affidavits of the parties, and other available evidence. *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

two months. This argument is a *non sequitur*. An oral message left with the Court's secretary does not put the Court on notice; moreover, even if the Court had been on notice before the expiration of the 120 days that plaintiff was having difficulties serving Chase, that would hardly constitute good cause for failure to serve within that time limit. In any event, plaintiff does not reckon with the well settled principle "that an attorney's inadvertence, neglect, mistake or misplaced reliance does not suffice to establish good cause for failure to make proper service within 120 days." *Mused v. U.S. Dep't of Agriculture Food and Nutrition Service*, 169 F.R.D. 28, 32 (W.D.N.Y.1996).

█ A district court may "relieve a plaintiff of the consequences of an application of [Rule 4(m) ] even if there is no good cause shown." Fed.R.Civ.P. 4(m) advisory committee's note to the 1993 amendments. Courts have weighed a variety of factors in making this determination, including: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999). Here, the last factor is dispositive in favor of an order relieving plaintiff of the consequences of his failure to effect timely service. There is no showing that Chase would be prejudiced by such an order. Chase has conceded that the Complaint makes out a facially sufficient claim for breach of contract. New York law would govern that claim, and the statute of limitations for breach of contract under New York law is six years. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (in a contract action, setting forth the prerequisites to a determination that New York law applies); CPLR 213(2). Thus, it is a virtual certainty that were this action dismissed for insufficiency of service of process, it would simply be re-filed and re-prosecuted, presumably in more diligent fashion, and Chase would find itself in the very position it occupies now, arguing motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim. It hardly seems to prejudice Chase to avoid that exercise in futility, and proceed directly to an assessment of those arguments on the merits, by relieving plaintiff of the rigors of Rule 4(m)'s time limitation, notwithstanding the complete absence of good cause to justify his failure to abide by it.[5]

### III. *Failure to State a Claim*

Chase has moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss or otherwise to strike causes of action and claims for breach of fiduciary duty, violation of New York Banking Law § 676, consequential and special damages, breach of implied duties of good faith and fair dealing, declaratory judgment directing Chase to engage the services of a "handwriting expert," conversion, negligence and gross

---

**5.** Chase cites this Court's dictum in a 1995 memorandum and order granting summary judgment in favor of a defendant arguing insufficiency of service of process. *See Alexander v. Forest City Pierrepont Assocs.*, No. 94–CV–3961, 1995 WL 406135 at *3 (E.D.N.Y. June 26, 1995) ("Creating exceptions to procedural rules will not enhance the ability of the courts to dispense justice, but rather will have the reverse effect."). Chase's citation is apt, but in this instance, the Court chooses in its discretion, and in the interest of judicial economy, to proceed straightaway to the task of a resolution on the merits. The other cases Chase relies on—*Yosef v. Passamaquoddy Tribe*, 876 F.2d 283 (2d Cir.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990), and *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81 (3rd Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)—were both decided before enactment of the 1993 amendments to Rule 4(m) and thus, before the advisory committee notation making clear that district courts may grant relief from Rule 4(m), even in the absence of good cause shown.

negligence, attorney's fees, and punitive damages. These claims are taken in turn.

### 1. Breach of Fiduciary Duty

 Chase argues, correctly, that under New York law a contract cause of action is generally the legal theory of recovery available to a depositor against his bank. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank,* 57 N.Y.2d 439, 444, 456 N.Y.S.2d 742, 442 N.E.2d 1253 (1982) (holding that "the underlying relationship between a bank and its depositor is the contractual one of debtor and creditor"); *Sundail Constr. Co. v. Liberty Bank of Buffalo,* 277 N.Y. 137, 141, 13 N.E.2d 745 (1938) ("The relation existing between a bank and its depositor is that of debtor and creditor, and the bank holds the fund, subject to be paid out upon the direction of the creditor according to the terms and conditions imposed by him."). More specifically, the relationship of debtor and creditor between bank and depositor binds the bank to an implied contract "under which it holds the deposit to be disbursed only in conformity with the customer's instructions ... and only upon the customer's order ...." *Middle East Banking v. State Street Bank Int'l,* 821 F.2d 897, 901–02 (2d Cir.1987) (citations omitted).

 Two inferences may be drawn. First, a cause of action sounding in tort alleged by a depositor against its bank must rest on some duty independent of the bank-depositor contract. *See Stella Flour & Feed Corp. v. Nat'l City Bank,* 285 A.D. 182, 183–84, 136 N.Y.S.2d 139 (1st Dep't 1954), *aff'd no op.,* 308 N.Y. 1023, 127 N.E.2d 864 (1955) ("The theory of tort liability may be discovered to overrun into breaches of contract in a very limited area; but the payment charged to a depositor's account by a bank on forged or altered drafts certainly does not come within that area."). Second, the bank-depositor agreement standing alone creates no fiduciary relationship between the parties. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 122 (2d Cir.1984) (holding that under New York law the "usual relationship" of bank and depositor is based on contractual principles, and involves no fiduciary duty from bank to depositor).

Plaintiff claims that Chase breached a fiduciary duty to him, but he has failed to allege any factual circumstance about his relationship with Chase that might support such a claim. Indeed, he has failed to allege anything more than a relationship of depositor to bank—precisely the contractual sort of relationship that, by itself, supports no further allegation of fiduciary breach. *See Fallon v. Wall St. Clearing Co.,* 182 A.D.2d 245, 250, 586 N.Y.S.2d 953 (1st Dep't 1992) (dismissing claims for breach of fiduciary duty against defendant bank because "[a] debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former"). Accordingly, the cause of action for breach of fiduciary duty must be dismissed.

### 2. N.Y. Banking Law § 676

 Section 676 of the New York Banking Law provides, in part:

> Any withdrawal of moneys from *any savings account or time deposit account* maintained in any banking organization ... which is made by means of an unauthorized signature is wholly inoperative as to the person whose name is signed unless such person has authorized or ratified such withdrawal ....

New York Banking Law § 676 (emphasis supplied). The plaintiff has alleged that he established a checking account at Chase. Complaint at ¶ 6, 31–34, Exhs. 1, 4. Because on its face § 676 has no bearing whatever on defenses available to banking institutions in cases involving checking accounts, the plaintiff's cause of action predicated on § 676 must be dismissed.

### 3. Special and Consequential Damages

The plaintiff seeks recovery not just of sums that he alleges were wrongfully withdrawn, but also for lost business opportu-

nities, interest on loans, and sums paid to third parties as the purported "result of not being able to utilize his own funds held at Chase." Complaint ¶ 37. Correctly construing this allegation as a claim for special and consequential damages, Chase has moved to dismiss the claim, on the ground that plaintiff has pleaded no conceivable basis at law for the recovery of such damages.

■■■■■ Under New York law, and U.S. contract law generally, the award of special and consequential damages is governed by the rule of *Hadley v. Baxendale,* 156 Eng.Rep. 145 (Ex. 1854), which limits recovery "to those injuries which the parties could reasonably have anticipated at the time the contract was entered into." *Spang Indus., Inc. v. Aetna Casualty and Surety Co.,* 512 F.2d 365, 368 (2d Cir.1975). Where the damages claimed "do not usually flow from the breach, then it must be established that the special circumstances giving rise to them should reasonably have been anticipated at the time the contract was made." *Id.* As described by the New York Court of Appeals, the rule is well established in New York case law:

> Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes .... In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made ....

*Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 493 N.E.2d 234 (1986).

■■■■ Where the alleged breach of contract "consists only of a failure to pay money, remedy for the breach is limited to the principal owed plus damages in the form of interest at the prevailing legal rate." *Meinrath v. Singer Co.,* 87 F.R.D. 422, 426 (S.D.N.Y.1980). In *Meinrath,* Judge Weinfeld traced this rule via a long line of New York cases to the U.S. Supreme Court's holding in *Loudon v. Taxing District,* 104 U.S. 771, 26 L.Ed. 923 (1881). The Court stated, without further discussion,

> that all damages for delay in the payment of money owing upon contract are provided for in the allowance of interest, which is in the nature of damages for withholding money that is due. The law assumes that interest is the measure of all such damages.

*Id.* at 772; *see also Meinrath,* 87 F.R.D. at 426 n. 8 (collecting New York decisions following *Loudon* ).

■■■ Plaintiff has offered to prove consequential damages based on interest paid on loans, lost business opportunities, and costs and expenses incurred as a direct result of not having access to the monies alleged to have been wrongfully transferred. But it is clear that plaintiff has failed to satisfy the threshold showing necessary for recovery under the rule of *Hadley v. Baxendale.* Plaintiff has sufficiently pleaded a cause of action for breach of a bank-depositor contract, but nothing more. The plaintiff has pleaded no facts suggesting that Chase was aware of any of the business ventures he had to forgo as a result of losing access to the funds at issue, which is to say that there is no sufficient pleading that the damages alleged were within the contemplation of the parties at the time their contract was formed. Thus, even if he had sufficiently and specifically pleaded facts showing how the loss of funds proximately caused his business ventures to suffer (which, as it happens, he has not done), he would still have failed to maintain a cause of action for special and consequential damages.

*See, e.g., Nwachukwu v. Chemical Bank,* No. 96–CV–5118, 1997 WL 441941 at *2–3 (S.D.N.Y. Aug.6, 1997) (where depositor had sufficiently pleaded breach of contract based on alleged wrongful debits from an account held with defendant bank, dismissing his additional claims for consequential damages for failure to allege that such damages were within the contemplation of the parties at the time the contract was formed). Accordingly, the plaintiff's claim for special and consequential damages is dismissed.

### 4. *Breach of Implied Duties of Good Faith and Fair Dealing*

▮▮▮ Plaintiff alleges that "[b]y virtue of the contractual and fiduciary relationship between plaintiff and Chase, Chase owed plaintiff an implied duty of good faith and fair dealing." Complaint ¶ 39. This purported cause of action is redundant. A plaintiff "may allege bad faith as part of its contract claim, but bad faith does not provide an independent basis for recovery." *Quail Ridge Assocs. v. Chemical Bank,* 162 A.D.2d 917, 919, 558 N.Y.S.2d 655, 657 (3d Dep't), *appeal dism'd,* 76 N.Y.2d 936, 563 N.Y.S.2d 64, 564 N.E.2d 674 (1990); *see also Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992) (breach of duty of good faith is merely a breach of underlying contract); *Geler v. National Westminster Bank USA,* 770 F.Supp. 210 (S.D.N.Y.1991) (allegations of breach of duty of good faith and fair dealing presuppose breach of express terms of contract and do not entitle movant to any relief not otherwise entitled to pursuant to a cause of action for breach of contract); *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 317 (1995) (same). It follows that the purported cause of action for breach of implied duties of good faith and fair dealing must be dismissed.

### 5. *Declaratory Judgment*

The plaintiff seeks "the issuance of a declaratory judgment directing Chase to enlist the services of an independent hand-writing expert" and "a judicial declaration of the immediate necessity for Chase to agree to utilize the conclusion of an independent hand-writing expert." Complaint ¶¶ 45, 46.

The purpose of the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* has been expressed by various formulations. The Second Circuit has stated that the purpose of the Act is to " 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.' " *United States v. Doherty,* 786 F.2d 491, 498 (2d Cir.1986) (quoting *Luckenbach S. S. Co. v. United States,* 312 F.2d 545, 548 (2d Cir.1963)). There is nothing in the circumstances of this case as pleaded that justifies the invocation of the mechanism of declaratory judgment.

Plaintiff alleges that he has suffered a $157,000 loss as a consequence of unauthorized transfers purportedly occurring in 1998, and it is that loss he is seeking to recover. His contract cause of action obviously suffices to litigate liability for the loss as alleged. The Complaint discloses no further damages to be avoided.

▮▮▮ Moreover, the "declaration" plaintiff seeks is that Chase be required to retain a handwriting expert. This is manifestly not appropriate relief upon an action for declaratory judgment. Inasmuch as this litigation will now proceed on the breach of contract claim, and inasmuch as the authenticity of the signatures purporting to authorize the transfers is likely to be an important issue in the case, both the plaintiff and the defendant are free to retain experts in the analysis of handwriting, as they may deem necessary in order fully to explore the facts underlying their claims and defenses. Certainly this Court has no power by means of the Declaratory Judgment Act to compel Chase to retain such an expert, or to sustain the costs of the plaintiff's retaining such an expert. For these reasons, the plaintiff's cause of

action for a declaratory judgment is dismissed.

### 6. Conversion

■ Plaintiff alleges that Chase "by making, authorizing, inducing and/or permitting the improper transfer to third person(s)" committed acts constituting conversion of property belonging to plaintiff. Complaint at ¶ 50. As a matter of law, plaintiff as a depositor cannot assert such a conversion cause of action against his bank.

■ "It is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124, 559 N.Y.S.2d 704, 712 (1st Dep't 1990), *appeal denied,* 77 N.Y.2d 803, 568 N.Y.S.2d 15, 569 N.E.2d 874 (1991). By its terms, this principle does not apply to the bank-depositor relationship, because funds deposited with a bank do not constitute a specific and identifiable fund.

This result follows from the principle already noted, that the relationship between a bank and a depositor is the strictly contractual one of debtor and creditor. A necessary incident of the debtor-creditor relationship between the creditor-depositor and the debtor-bank is that any funds deposited by the creditor-depositor into an account with the debtor-bank become the bank's property. The bank at the same time becomes contractually indebted to the depositor in the amount of the funds deposited. *See, e.g., Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 560 (2d Cir.1976) ("Money deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action."). It follows that the plaintiff cannot allege that Chase took or

retained "specific and identifiable property" belonging to him, and it also follows that a conversion claim cannot be stated. *See Calisch Assocs., Inc. v. Manufacturers Hanover Trust Co.,* 151 A.D.2d 446, 448, 542 N.Y.S.2d 644, 646 (1st Dep't 1989) ("[A] customer's bank account is merely a debt owed to it by the bank, and there is no identifiable property which could have been taken by defendant."); *Wexselblatt v. Bank of Boston Int'l,* 666 F.Supp. 513, 517 (S.D.N.Y.1987) (dismissing cause of action for conversion by account holder who could not allege that bank took "specific and identifiable property" belonging to plaintiff and who was in substance seeking damages for breach of contract). Accordingly, the plaintiff's cause of action for conversion must be dismissed.

### 7. Negligence and Gross Negligence

The plaintiff alleges both negligence and "gross negligence" against Chase. Complaint at ¶¶ 54–56. These purported causes of action are patently groundless, and must be dismissed.

■ It is settled that a depositor may not sue his bank in negligence based solely on the contractual relationship between bank and depositor. *See Calisch Assocs. Inc. v. Manufacturers Hanover Trust Co.,* 151 A.D.2d at 447, 542 N.Y.S.2d at 645–46 ("A cause of action for negligence cannot be based on a breach of a contractual duty."); *Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank, N.A.,* 97 A.D.2d 936, 937, 470 N.Y.S.2d 733, 734 (3d Dep't 1983) ("A tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached."); *Luxonomy Cars, Inc. v. Citibank, N.A.,* 65 A.D.2d 549, 550, 408 N.Y.S.2d 951, 954 (2d Dep't 1978) ("Abstractly, a tort may accompany a breach of contract, but only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and

that independent duty is also violated.") (citations omitted). Moreover, New York law recognizes no cause of action for negligent breach of contract. *Megaris Furs, Inc. v. Gimbel Bros., Inc.*, 172 A.D.2d 209, 211, 568 N.Y.S.2d 581, 583 (1st Dep't 1991) ("Plaintiffs' second cause of action alleges negligent performance of the contract, a cause of action which simply does not exist.").

The plaintiff's assertion of "gross negligence" does not affect the application of these principles. The difference between "negligence" and "gross negligence" is one of fact, not law, *Food Pageant Inc. v. Consolidated Edison Co.*, 54 N.Y.2d 167, 173, 445 N.Y.S.2d 60, 429 N.E.2d 738 (1981), and plaintiff alleges no facts to sustain a cause of action for gross negligence. "Gross negligence ... is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi U.S.A., Ltd. v. Jewelers Protection Servs. Ltd.*, 81 N.Y.S.2d 821, 823–24, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993).

Plaintiff also alleges, albeit by nothing more than a rhetorical flourish, that Chase was "reckless." Complaint at ¶ 56. Under New York law "[r]ecklessness is more than ordinary negligence, more than want of ordinary care." *Sheridan v. Fletcher*, 270 A.D. 29, 32, 58 N.Y.S.2d 466, 469 (3d Dep't 1945). Indeed, the word "implies a substantially greater degree or grosser form of negligence ... desperately heedless, as from folly, passion or perversity, impetuosity or rashly adventurous." *Id.* Once again, a cause of action based on harm suffered due to reckless conduct must be supported by specific and particular allegations of extreme wrongdoing. Of course, no such allegations have been made here. A cause of action for breach of contract has been maintained. In the absence of factual allegations showing more, heated language and indignation will not suffice to bootstrap that cause of action into a cause of action for negligence, gross negligence, or recklessness. Accordingly, the plaintiff's purported causes of action based on these theories of liability are dismissed.

### 8. *Attorney's Fees*

The plaintiff has interposed a claim for attorney's fees, based on Chase's alleged "wrongdoing and illegal conduct." Complaint at ¶ 58. The claim appears unsupported by any substantive legal theory of recovery, and therefore, cannot be maintained. *See Nwachukwu v. Chemical Bank, supra*, 1997 WL 441941, at * 8 (dismissing claim for attorney's fees where plaintiff had "merely state[d] a set of facts that could form the basis for a statutory or common-law cause of action," but had otherwise stated no cause of action).

More fundamentally, New York law is clear that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). This rule conforms to the universal American rule "not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21–22, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979). Since no statute, rule, or agreement of the parties here provides otherwise, plaintiff's purported cause of action for attorney's fees has no merit, and must be dismissed.

### 9. *Punitive Damages*

Finally, plaintiff has claimed punitive damages. Complaint at ¶ 61(b). Once again, however, nothing in the Complaint discloses either the factual predicates of the claim, or a legal theory that might sustain it. Under New York law, punitive damages "may not be awarded in breach of contract cases, which involve a private wrong and where no public rights

are involved." *Durham Indus., Inc. v. North River Ins. Co.,* 673 F.2d 37, 41 (2d Cir.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). Indeed, punitive damages "are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.' " *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d at 315–16, 639 N.Y.S.2d 283, 662 N.E.2d 763.

■ Courts have consistently held that punitive damages awards are not appropriate on the type of claim asserted here against Chase. *See, e.g., Titan Air Conditioning Corp. v. Chase Manhattan Bank, N.A.,* 61 A.D.2d 764, 765, 402 N.Y.S.2d 12, 14 (1st Dep't 1978) (affirming dismissal of a claim for punitive damages based on allegations that the bank paid checks bearing forged endorsements even though there were factual issues as to whether the bank was grossly negligent and acted in bad faith); *Mansi v. Gaines,* 216 A.D.2d 536, 538, 628 N.Y.S.2d 804, 806 (2d Dep't 1995) (award of punitive damages against bank unsustainable on allegations that bank honored checks bearing forged signatures); *Singleton v. Nat'l Bank of North America,* 43 A.D.2d 857, 351 N.Y.S.2d 722 (2d Dep't 1974) (alleged negligence by bank in honoring forged checks drawn on plaintiff's checking account did not warrant recovery of punitive damages). For this reason, together with the complete absence of allegations that might otherwise sustain punitive damages, the claim for punitive damages is dismissed.

### CONCLUSION

For the reasons set forth in the foregoing, the defendant's motions to dismiss the Complaint for lack of subject matter jurisdiction, and for insufficiency of service of process are denied, and the defendant's motion to dismiss all causes of action except the claim for breach of contract for failure to state a claim is granted. Accordingly this case shall proceed on plaintiff's sole remaining claim for breach of contract.

SO ORDERED.