United States Court of Appeals,

Eleventh Circuit.

No. 95-4419.

Kaare FOY, Plaintiff-Appellant,

v.

SCHANTZ, SCHATZMAN & AARONSON, P.A., Defendant-Appellee.

March 31, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-6490-CIV-NCR), Norman E. Roettger, Chief Judge.

Before BARKETT, Circuit Judge, KRAVITCH, Senior Circuit Judge, and HARRIS[*], Senior District Judge.

KRAVITCH, Senior Circuit Judge:

Congress has provided that, for the purposes of determining diversity jurisdiction, "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a). This case requires us to determine, as an issue of first impression among the courts of appeals, whether an alien who intends to reside in this country permanently but who has not yet attained official permanent resident immigration status (i.e., a green card) should be considered an alien admitted for permanent residence within the meaning of this section.

I.

On June 11, 1993, appellant filed this diversity action

---

[*]Honorable Stanley S. Harris, Senior U.S. District Judge for the District of Columbia, sitting by designation.

alleging legal malpractice against a Florida law firm.[1] At that time, he was an Australian citizen and a resident of Palm Beach County, Florida. He had been living and working in Florida on a temporary professional work visa since he came to this country in the spring of 1989. Appellant had applied for, but had not yet received, a green card from the Immigration and Naturalization Service ("INS") when he filed this action.

During the third day of trial, the district court *sua sponte* questioned appellant regarding his citizenship status. After learning that appellant had resided in Florida for four years before he filed this lawsuit and had paid United States income tax during this period, the district court concluded that appellant was "an alien admitted to the United States for permanent residence" under § 1332(a), and thus a citizen of Florida for purposes of diversity. Then, finding no diversity between the parties, the district court dismissed the action for lack of subject matter jurisdiction.

We review *de novo* a dismissal for lack of subject matter jurisdiction. *Woodruff v. United States Dept. of Labor,* 954 F.2d 634, 636 (11th Cir.1992).

## II.

The sole issue on appeal is whether appellant was "an alien admitted to the United States for permanent residence" within the meaning of § 1332(a) when he filed this action. As in all cases of

---

[1] We recite only those facts necessary for the resolution of the jurisdictional question, which depends on the facts as they existed at the time the complaint was filed. *See Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957).

statutory construction, we begin with the language of the statute. Section 1332(a) refers to aliens "admitted" to this country for for permanent residence.  "Admit" is commonly understood to mean "to allow entry" or "to give entrance or access."  *See Webster's Third New International Dictionary* (1986).  The use of "admitted" in the statute suggests that Congress intended § 1332(a) to apply to individuals who have been allowed to enter this country for permanent residence by the INS. The plain language of the statute therefore directs courts to refer to an alien litigant's official immigration status.

Reference to the immigration laws further supports this interpretation of the statute.  In that context, Congress has defined a substantially similar phrase, "lawfully admitted for permanent residence," to mean "the *status* of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws."  8 U.S.C. § 1101(a)(20) (emphasis added).  The similarity of the language used in the two different contexts suggests that Congress intended to import § 1101(a)(20)'s definition into the diversity statute.

Appellee argues that the absence of the word "lawfully" in § 1332(a) indicates that Congress intended a different, more subjective standard to apply in the jurisdictional context.  In several other contexts, however, Congress has referred to aliens admitted to this country for permanent residence without using the word "lawfully."  *See, e.g.,* 8 U.S.C. § 1186a(c)(4) (conditional permanent resident status);  8 U.S.C. § 1255(a) (adjustment of alien status);  18 U.S.C. § 2423 (criminal transportation of

minors); 20 U.S.C. § 1145c (education); 22 U.S.C. § 6010 (foreign relations). We find nothing in these statutes, or in § 1332(a), indicating that Congress intended the omission of the word "lawfully" to make "admitted to the United States for permanent residence" depend upon anything other than official immigration status.

Finally, nothing in the legislative history undermines the plain language of § 1332(a). The permanent resident alien provision of § 1332(a) was adopted in 1988 as part of the Judicial Improvements and Access to Justice Act, Pub.L. No. 100-702, 102 Stat. 4642. This act was "clearly designed to improve federal court administration and efficiency." *Singh v. Daimler-Benz AG,* 9 F.3d 303, 307 (3d Cir.1993) (discussing legislative history). Given this goal, we find it highly unlikely that, as appellee contends, Congress intended the federal courts to engage in a fact-intensive, case-by-case analysis to determine whether each individual alien litigant, regardless of his official immigration status, actually intended to reside permanently in the United States.[2]

---

[2]The only reference in the legislative history to the permanent resident alien provision of § 1332(a) suggests that it was added to the statute to place permanent resident aliens "on equal footing with their U.S. citizen neighbors" by depriving them of their right to access federal courts based solely on their foreign citizenship. *Aideyan v. Greaves,* 908 F.Supp. 196, 197 (S.D.N.Y.1995); *see also* 134 Cong. Rec. 31,055 (1988) ("[T]here is no apparent reason why actions between persons who are permanent residents of the same State should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state.") (section-by-section analysis submitted by Sen. Hefflin). This reference sheds little light on how courts are to determine which aliens have been "admitted to the United States for permanent residence."

Rather, we conclude that section 1332(a) plainly directs courts to refer only to an alien litigant's official immigration status to determine if the alien was "admitted to the United States for permanent residence." Contrary to the court below but in accord with every other district court that has specifically addressed this issue, we hold that the permanent resident alien provision of § 1332(a) applies only to aliens who have received permission from the INS to remain permanently in this country. *See, e.g., Kato v. County of Westchester,* 927 F.Supp. 714, 715 (S.D.N.Y.1996) (section applies only to aliens who have been accorded lawful permanent resident status under the immigration laws); *Chan v. Mui,* 1993 WL 427114, *1 (S.D.N.Y. Oct. 20, 1993) (section does not apply to alien with pending green card application); *Miller v. Thermarite Pty. Ltd.,* 793 F.Supp. 306, 308 (S.D.Ala.1992) (section does not apply to alien with nonimmigrant temporary worker status).[3] Because appellant had not yet received permanent resident status under the immigration laws when he filed this complaint, we reverse the order of the district court dismissing appellant's claim.

Appellee nevertheless urges us to affirm the dismissal of appellant's claim on the alternative ground that the district court

---

[3]Commentators are likewise in agreement that the permanent resident alien provision of § 1332(a) refers only to those aliens who have been accorded permanent resident status by the INS. *See, e.g.,* 1 James Wm. Moore *et al., Moore's Federal Practice* ¶ 0.75[1.5], at 800.56 (1996) ("[I]t is clear that [§ 1332(a) ] affects only the status of those aliens with "green cards'—admitted to the United States for permanent residence."); 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3604, at 96 (1996) (language of § 1332(a) suggests that it refers only to aliens with green cards).

previously should have dismissed appellant's action for failure to state a claim.  Because the denial of a motion to dismiss is not a final order reviewable under 28 U.S.C. § 1291, we have jurisdiction to review the district court's order denying appellee's motion to dismiss only if it "merge[s] into a final judgment of the district court."  *Akin v. PAFEC, Ltd.,* 991 F.2d 1550, 1563 (11th Cir.1993) (holding that rulings on jury demand motions did not merge into order granting summary judgment).  Only those prior non-final orders that "produced the [final] judgment" of the district court are subject to our review on appeal.  *Id.* (quoting *Barfield v. Brierton,* 883 F.2d 923, 930 (11th Cir.1989));  *see also U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1103 (9th Cir.1985) (noting that appellate jurisdiction of non-final orders extends only to those rulings "that may have affected the outcome of proceedings in the district court").  Because the denial of the motion to dismiss in this case did not produce or otherwise lead to the jurisdictional dismissal, our appellate jurisdiction does not extend to that prior, non-final order.[4]

---

[4]Even if the denial of the motion to dismiss could be said to have produced the jurisdictional dismissal (by not disposing of the case earlier), our decision to reverse the district court's jurisdictional dismissal precludes a review of the motion to dismiss.  When a court reverses the order terminating the proceedings, "there no longer exists a final judgment which supports this court's review of interlocutory orders." *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 26 (9th Cir.1981);  *see also Akin,* 991 F.2d at 1563, n. 18 (reversal of final judgment returns previously merged orders to non-final interlocutory status);  *Milan Express Co., Inc. v. Western Surety Co.,* 886 F.2d 783, 785 n. 1 (6th Cir.1989) (court's reversal of order dismissing for lack of subject matter jurisdiction removes final judgment necessary to support review of other issues).

Finally, because the jurisdictional facts are in no way related, let alone "inextricably interwoven," with the facts underlying the merits of this case, our pendent appellate jurisdiction cannot support our review of the motion to dismiss. *See Harris v. Board of Education of the City of Atlanta,* 105 F.3d 591, 594 (11th Cir.1997) (noting that "pendent appellate jurisdiction is limited to questions that are "inextricably interwoven' with an issue properly before the appellate court") (citing *Swint v. Chambers County Commission,* 514 U.S. 35, ----, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995)).

## III.

Accordingly, we REVERSE the district court's order dismissing appellant's claim, and REMAND the case for proceedings consistent with this opinion.