[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15068
Non-Argument Calendar
_____

Agency No. A200-413-903


DARSONI DE OLIVEIRA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 15, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Darsoni De Oliveira, a native and citizen of Brazil, seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") finding that she is removable for having married to obtain a visa by fraud. *See* 8 U.S.C. § 1227(a)(1)(G)(ii). On appeal, De Oliveira challenges whether substantial evidence supports the IJ's decision and whether the IJ made an adequate credibility determination. After careful review, we deny the petition in part and dismiss it in part.

## I.

De Oliveira entered the United States in July 2005 as a nonimmigrant visitor with authorization to remain until January 2006. De Oliveira married Carlos Martinez, a Cuban citizen, on November 19, 2009. Shortly thereafter, on November 30, 2009, De Oliveira filed an I–485 application for adjustment of status under the Cuban Refugee Adjustment Act.

On May 10, 2010, an officer with the United States Citizenship and Immigration Services ("USCIS") conducted an interview with De Oliveira concerning her application for adjustment of status. During this interview, De Oliveira signed a sworn statement admitting that her marriage to Martinez was not genuine and was made solely for immigration purposes. Relying on De Oliveira's statement, USCIS denied her I–485 adjustment application.

2

That same day, the Department of Homeland Security ("DHS") served De Oliveira with a notice to appear, charging her as removable for remaining in the United States longer than permitted, 8 U.S.C. § 1227(a)(1)(B), and for failing or refusing to fulfill a marital agreement that was made for the purpose of obtaining immigrant status, *id.* § 1227(a)(1)(G)(ii).  At the master calendar hearing in June 2011, De Oliveira conceded that she had remained in the United States for a time longer than permitted, but she denied that she had entered into a sham marriage solely for immigration purposes.

The case proceeded to a merits hearing before the IJ in March 2013.  At the hearing, the government submitted copies of De Oliveira's sworn statement and the USCIS's denial of her I–485 adjustment application.  The government also elicited testimony from Mark Robertson, the USCIS officer who conducted the interview with De Oliveira concerning her I–485 application.

Robertson testified that, during separate interviews with De Oliveira and Martinez, he discovered inconsistencies in their responses, including where and how they obtained their engagement rings.  When he confronted De Oliveira with these inconsistencies, she admitted that she had married Martinez for the sole purpose of using his Cuban citizenship to obtain her green card[1] and that they had never lived together.  She then executed the sworn statement memorializing these

---

[1]  "Green card" refers to legal-permanent-resident immigration status.  *See, e.g.*, *Foy v. Schantz, Schatzman & Aaronson, P.A.*, 108 F.3d 1347, 1348 (11th Cir. 1997).

and other admissions.  Robertson testified that De Oliveira was not threatened, coerced, or enticed into giving this statement and that only he and another USCIS officer were present for the interview.

According to De Oliveira's testimony at the hearing, she married Martinez because she loved him, even if she also married him to obtain a green card.  She stated that they were married in Tampa and that Martinez resided with her in Sarasota.  De Oliveira also testified that she was coerced into signing the sworn statement, which was prepared by Robertson.  She described the interview process as "terrible," lasting six hours and being conducted in the presence of four USCIS officers, two of whom were armed.  According to De Oliveira, at no point during this time was she advised of her right to obtain an attorney.  De Oliveira stated that Robertson told her she would be arrested if she failed to sign the statement.

On cross-examination, De Oliveira admitted that she and Martinez divorced in December 2010.  She acknowledged that she had not seen Martinez since the USCIS interview but explained that this was because USCIS told her she should not have contact with him.  When confronted with her prior, sworn statement about where Martinez lived during their marriage, she clarified that he lived in Tampa because he had a problem with law enforcement in Sarasota.  She did not deny saying the things in the sworn statement but claimed that she had been threatened.

4

The IJ ordered De Oliveira removed to Brazil. The IJ determined that De Oliveira's marriage to Martinez was a sham for the sole purpose of obtaining a visa, so she was removable under 8 U.S.C. § 1227(a)(1)(G)(ii). The IJ reviewed the documentary and testimonial evidence, noting that De Oliveira herself conceded, in her 2010 interview with USCIS, that she and Martinez had never lived together as husband and wife and that their marriage was fraudulent.

The IJ also addressed the respective credibility of the witnesses, noting that the case was "basically a credibility issue between the officer of the USCIS and the respondent herself." The IJ credited Robertson's testimony over De Oliveira's. In support of his conclusion, the IJ noted that he had observed both witnesses' demeanor while testifying and that he believed De Oliveira was untruthful because she was unable to look him in the eye while testifying, which is "usually" a sign of untruthfulness. In addition, the IJ stated, De Oliveira's testimony was inconsistent with her own prior statements and Robertson's testimony. Moreover, the IJ found, there was nothing in the record to suggest that De Oliveira's prior sworn statement was coerced or that the immigration officer provided untruthful testimony. Accordingly, the IJ found that De Oliveira had married for the purpose of seeking a visa by fraud.

De Oliveira appealed to the BIA, which affirmed the IJ's decision. The BIA determined that substantial evidence supported the IJ's removability determination,

including the sworn statement and Robertson's corroborating testimony.    In addition, the BIA found that the IJ's adverse credibility finding was not clearly erroneous, given that De Oliveira's testimony at the hearing was inconsistent with Robertson's testimony and her prior sworn statement.    Accordingly, the BIA dismissed De Oliveira's appeal.    De Oliveira timely filed with this Court a petition for review of the BIA's order.

## II.

Generally, we only review the decision of the BIA as the final agency decision.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).    However, where the BIA agrees with the IJ's reasoning, we also review the decision of the IJ to the extent of that agreement.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).    Here, because the BIA agreed with the IJ's reasoning, we review the decisions of both the IJ and BIA.  *See id.*

We review administrative factual findings for substantial evidence.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*).    Under the substantial-evidence test, we view the record in the light most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision.  *Id.* at 1027.    "We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record as a whole."  *Id.* (internal quotation marks omitted).    Put differently, the decision of the BIA and IJ can only

6

be reversed if the record compels a contrary conclusion.  *Id.*; *see* 8 U.S.C. § 1252(b)(4)(B).  "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027.

We review our subject-matter jurisdiction *de novo*.  *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).  We lack jurisdiction to consider claims raised in a petition for review that were not raised before the BIA. *Id.*; *see* 8 U.S.C. § 1252(d)(1).

## III.

De Oliveira was charged with having engaged in marriage fraud to obtain a visa.  *See* 8 U.S.C. § 1227(a)(1)(G).  Specifically, DHS alleged that De Oliveira was subject to removal under 8 U.S.C. § 1227(a)(1)(G)(ii), which provides that an alien is subject to removal if she "has failed or refused to fulfill the alien's marital agreement which . . . was made for the purpose of procuring the alien's admission as an immigrant." *Id.*  The IJ found that De Oliveira entered into a sham marriage for the sole purpose of obtaining a visa and therefore ordered her removal.

## A.

De Oliveira challenges two aspects of the IJ's adverse credibility determination.  First, she contends that the IJ improperly relied on her demeanor, particularly her lack of eye contact, to make an adverse credibility finding and to

7

sustain her removal.  She asserts that cultural differences undermine any reliance on the lack of eye contact to assess a witness's credibility.  *See, e.g.*, *Kadia v. Gonzales*, 501 F.3d 817, 819 (7th Cir. 2007) (noting "that immigration judges often lack the 'cultural competence' to base credibility determinations on an immigrant's demeanor").  Second, she contends that the IJ did not make a specific credibility determination, instead merely stating that the lack of eye contact "usually" indicates untruthfulness.

We lack jurisdiction to consider these arguments because they were not raised before the BIA.  In her brief to the BIA, De Oliveira argued that the IJ's removability determination was not supported by substantial evidence and that the IJ improperly shifted the burden of proof, but she did not challenge the IJ's reliance on her demeanor or the adequacy of the IJ's credibility determination.  In her brief on appeal to this Court, De Oliveira asserts that her filings before the BIA "sufficiently challenged the manner in which the Immigration Court arrived at its credibility determination," (Appellant's Br. at 33), but we have reviewed these documents and found no such similar arguments.  Although the BIA addressed the IJ's adverse credibility determination *sua sponte*, § 1252(d)(1)'s exhaustion requirement still applies to bar our review.  *See Amaya-Artunduaga*, 463 F.3d at 1250-51 ("[W]e think the goals of exhaustion are better served by our declining to review claims a petitioner, without excuse or exception, failed to present before the

8

BIA, even if the BIA addressed the underlying issue *sua sponte*.").  Accordingly, we dismiss De Oliveira's challenge to the bases and adequacy of the IJ's adverse credibility determination.

## B.

De Oliveira also maintains that DHS failed to establish her removability under 8 U.S.C. § 1227(a)(1)(G)(ii) "by clear and convincing evidence" that is "reasonable, substantial, and probative," as required by 8 U.S.C. § 1229a(c)(3)(A). To reiterate, we review whether "substantial evidence" supports the agency's decision, and "[w]e must affirm the [agency's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi*, 386 F.3d at 1026-27 (internal quotation marks omitted).  The fact that DHS was required to prove De Oliveira's removability by clear and convincing evidence "does not make our review of the [agency's] decision more stringent." *Id.* at 1027.

Here, substantial evidence supports the IJ and BIA's conclusion that De Oliveira entered into a fraudulent marriage for the purpose of obtaining admission. First, De Oliveira signed a sworn statement in May 2010 admitting that she married Martinez solely for the purpose of obtaining her green card and that she intended to divorce him within two months of obtaining it.  In the statement, De Oliveira also admitted that she and Martinez never lived together as husband and

9

wife and that they had staged pictures together and memorized each other's personal information in order to make their marriage seem genuine.

Second, the testimony of the USCIS officer who conducted De Oliveira's adjustment interview corroborated the sworn statement. The officer, Robertson, testified that De Oliveira admitted that her marriage was a sham after being confronted with discrepancies between her responses and those of Martinez in separate interviews. Although De Oliveira later testified that the sworn statement was coerced, she did not deny having said the things attributed to her, and Robertson's testimony contradicted De Oliveira's portrayal of the interview as coercive or threatening.[2] The IJ credited Robertson's testimony over De Oliveira's. Under these circumstances, the fact that De Oliveira's testimony supports a conclusion opposite from that reached by the IJ "is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027.

Finally, some of De Oliveira's testimony at the hearing likewise supported the agency's determination. For instance, she admitted that she married Martinez in part to obtain a green card, even if she also maintained that she married him because she loved him. She also testified that she had not seen Martinez since the

---

[2] De Oliveira also contends that the BIA erred in failing to remand the matter to the IJ because she submitted a sworn declaration with her brief to the BIA explaining that she was coerced into signing the sworn statement. Given that this issue was presented and resolved by the IJ at the hearing, with De Oliveira testifying to substantially the same facts as contained in her attached declaration, remand was unnecessary.

10

USCIS interview and otherwise indicated that she had essentially no involvement with Martinez once her application for adjustment of status was denied.

Overall, the record does not compel a conclusion contrary to the IJ and BIA's determination that De Oliveira was removable for having engaged in marriage fraud to obtain admission.  Accordingly, we deny De Oliveira's petition in this respect.

**PETITION DENIED IN PART, AND DISMISSED IN PART.**